JOHNSTON COUNTY, N.C. v. R. N. ROUSE & CO., INC.

No. 308PA91

(Filed 5 March 1992)

**Arbitration and Award § 3 (NCI4th)— construction contract— arbitration clause in general provisions—consent to jurisdiction in supplementary conditions**

The trial court and the Court of Appeals erred by holding that a supplementary general condition in a construction contract, which provided that the contractor agreed to submit to the jurisdiction of North Carolina courts, conflicted with an arbitration clause in the general conditions and, under a precedence clause in the instructions to bidders, that the contract did not contain an agreement to arbitrate. There is no irreconcilable conflict between the arbitration clause of the general conditions (section 7.9) and the supplementary general condition (section 7.1.1) because that section merely provides that the contractor consents to the jurisdiction of the courts of North Carolina for any action brought to enforce the arbitration agreement or an award resulting from arbitration.

**Am Jur 2d, Arbitration and Award §§ 14, 15, 33.**

**Validity and effect, and remedy in respect, of contractual stipulation to submit disputes to arbitration in another jurisdiction. 12 ALR3d 892.**

Justice LAKE did not participate in the consideration or decision of this case.

ON discretionary review pursuant to N.C.G.S. § 7A-31 of an unpublished decision of the Court of Appeals affirming an order of *Stanback, J.*, entered 24 July 1989 in Superior Court, JOHNSTON County. Heard in the Supreme Court 11 February 1992.

*Patton, Boggs & Blow, by Charles B. Robson, Jr., and William Britt, County Attorney for Johnston County, for petitioner-appellee.*

*Gordon C. Woodruff, P.A., by Gordon C. Woodruff, and Smith, Currie & Hancock, by Ronald G. Robey and D. Lee Roberts, Jr., for respondent-appellant.*

MEYER, Justice.

The sole question presented for review by this Court concerns the effect, if any, to be given an arbitration clause contained in a construction contract executed by the parties, Johnston County and R.N. Rouse & Co., Inc. Respondent contends that the Court of Appeals erred in concluding that another provision of the contract irreconcilably conflicted with the arbitration clause and thus rendered the arbitration clause ineffectual. We agree and therefore reverse the Court of Appeals.

The dispute in this case concerns a contract for the construction of the Johnston County Courthouse and Jail Annex in Smithfield, North Carolina. In July 1986, Johnston County solicited competitive bids for the project. R.N. Rouse & Co., Inc. ("Rouse"), a North Carolina corporation, submitted the lowest bid and was awarded the contract.

On 24 September 1986, Johnston County and Rouse entered into a contract for the construction of the project. An architect and engineer hired by Johnston County prepared the contract, which consists of several documents, including (1) American Institute of Architects Standard Form of Agreement Between Owner and Contractor (AIA Document A101); (2) American Institute of Architects General Conditions of the Contract for Construction (AIA Document A201); (3) supplementary general conditions; and (4) instructions to bidders.

Article 7 of the General Conditions of the Contract for Construction contains several provisions. Section 7.1.1 of the general

conditions, following the title, "Governing Law," provides that "[t]he Contract shall be governed by the law of the place where the Project is located." Section 7.9 of the general conditions, entitled "Arbitration," includes an arbitration clause, as follows:

> 7.9.1 All claims, disputes and other matters in question between the Contractor and the Owner arising out of, or relating to, the Contract Documents or the breach thereof . . . shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining unless the parties mutually agree otherwise. . . . The foregoing agreement to arbitrate . . . shall be specifically enforceable under the prevailing arbitration law. The award rendered by the arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

Also included in the contract between the parties are certain supplementary general conditions, which were drafted by Johnston County's architect and engineer. These provisions are typewritten, with typewritten article headings that correspond to the article headings contained in the general conditions. Article 7 of the supplementary general conditions includes the following provision:

> 7.1.1 By executing a contract for the Project the Contractor agrees to submit itself to the jurisdiction of the courts of the State of North Carolina for all matters arising or to arise hereunder, including but not limited to performance of said contract and payment of all licenses and taxes of whatever nature applicable thereto.

A typewritten document entitled "Instructions to Bidders & General Conditions" contains a provision concerning the precedence to be given conflicting provisions of the contract. Section 01.B. of the instructions provides that "in the event of any conflicting statements or requirements in these General Conditions and the Supplementary General [C]onditions . . . of these Specifications, the Supplementary General Conditions shall have precedence."

After Rouse had completed construction of the project, a dispute arose concerning the payment due Rouse. In March 1989, Rouse filed with the American Arbitration Association a demand for arbitration. In its demand, Rouse alleged that it was due additional compensation for extra work, delays, inefficiencies, interferences,

and hindrances caused by Johnston County and by those for whom Johnston County was responsible. Rouse also sought "compensation for the contract balance, the costs of . . . arbitration, interest, attorney's fees and expenses, and for all other relief appropriate and just."

On 2 June 1989, Johnston County filed with the Johnston County Superior Court a motion to stay the arbitration proceeding. By order dated 24 July 1989, the trial court granted Johnston County's application for a stay and denied a motion to compel arbitration filed by Rouse. On Rouse's motion for findings of fact and conclusions of law, made pursuant to N.C. R. Civ. P. 52(b), the trial court subsequently entered an order on 7 August 1989 in which it concluded that the contract between Johnston County and Rouse did not contain an agreement to arbitrate and that the court was therefore required to stay the arbitration proceeding.

In an unpublished opinion, a unanimous panel of the Court of Appeals affirmed the trial court, reasoning, as did the trial court, that section 7.1.1 of the supplementary general conditions conflicted with the arbitration provision contained in section 7.9 of the general conditions. Applying the precedence clause contained in section 01.B. of the instructions to bidders, the Court of Appeals concluded that the contract did not contain an agreement to arbitrate, "the parties instead having agreed to submit their disputes to the North Carolina courts."

Respondent Rouse contends that the contract contains a binding arbitration provision, which was not superseded by the language provided in section 7.1.1 of the supplementary general conditions. We agree.

N.C.G.S. § 1-567.2 provides that a contract provision requiring that the parties settle disputes by arbitration is valid, enforceable, and irrevocable unless the parties agree to the contrary. *Servomation Corp. v. Hickory Construction Co.*, 316 N.C. 543, 544, 342 S.E.2d 853, 854 (1986). North Carolina has a strong public policy favoring the settlement of disputes by arbitration. Our strong public policy requires that the courts resolve any doubts concerning the scope of arbitrable issues in favor of arbitration. This is true " 'whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.' " *Cyclone Roofing Co. v. LaFave Co.*, 312 N.C. 224, 229, 321 S.E.2d 872, 876 (1984) (quoting *Moses H. Cone Hosp.*

*v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 74 L. Ed. 2d 765, 785 (1983) ). In *Servomation Corp.*, we considered the public policy favoring arbitration and concluded that the plaintiff in that case had failed to show that the defendant had waived its contractual right to arbitration by proceeding to litigate a court action brought by the plaintiff. Today, we are faced with a question not of waiver of the parties' rights to compulsory arbitration but one concerning the *existence* of an arbitration agreement between the parties. We reaffirm the position we articulated in *Cyclone Roofing Co.* and *Servomation Corp.* and reiterate that any doubt concerning the existence of such an agreement must also be resolved in favor of arbitration.

The parties in this case have strenuously argued that there is no doubt concerning the existence of an arbitration agreement between the parties. According to respondent, Rouse, the arbitration clause set forth in section 7.9 of the general conditions is "entirely consistent with" section 7.1.1 of the supplementary general conditions, and "*both* clauses should have been enforced by the trial court." Johnston County contends, and the Court of Appeals agreed, that the contract must be construed as requiring that all disputes arising under the contract be litigated in the courts of North Carolina. To support its position, Johnston County argues that section 7.9 of the general conditions (the arbitration clause) and section 7.1.1 of the supplementary general conditions (erroneously referred to as a forum selection clause by Johnston County) are in irreconcilable conflict, as they both purport to establish the exclusive forum for resolution of disputes arising under the contract. We agree with respondent and therefore reverse the decision of the Court of Appeals.

Historically, parties have endeavored to avoid potential litigation concerning judicial jurisdiction and the governing law by including in their contracts provisions concerning these matters. Although the language used may differ from one contract to another, one or more of three types of provisions (choice of law, consent to jurisdiction, and forum selection), which have very distinct purposes, may often be found in the boilerplate language of a contract. The first type, the choice of law provision, names a particular state and provides that the substantive laws of that jurisdiction will be used to determine the validity and construction of the contract, regardless of any conflicts between the laws of the named state and the state in which the case is litigated. Robert A.

Leflar, *American Conflicts Law* § 144, at 405-07, § 147, at 413-19 (4th ed. 1986); *see also* Restatement (Second) of Conflict of Laws §§ 186, 187 (1971); U.C.C. § 1-105, 1 U.L.A. 29 (1989). The second type, the consent to jurisdiction provision, concerns the submission of a party or parties to a named court or state for the exercise of personal jurisdiction over the party or parties consenting thereto. By consenting to the jurisdiction of a particular court or state, the contracting party authorizes that court or state to act against him. Robert A. Leflar, *American Conflicts Law* § 3, at 5, § 27, at 74-77 (4th ed. 1986). A third type, a true forum selection provision, goes one step further than a consent to jurisdiction provision. A forum selection provision designates a particular state or court as the jurisdiction in which the parties will litigate disputes arising out of the contract and their contractual relationship. We are not here concerned with a true forum selection provision.

Due to the varying language used by parties drafting these clauses and the tendency to combine such clauses in one contractual provision, the courts have often confused the different types of clauses. *See, e.g., Patten Sec. v. Diamond Greyhound & Genetics, Inc.*, 819 F.2d 400 (3d Cir. 1987) (describing a provision combining a choice of law clause and a consent to jurisdiction clause as a forum selection clause). One commentator recognizing this confusion has offered the following guidance:

> A typical forum-selection clause might read: "[B]oth parties agree that only the New York Courts shall have jurisdiction over this contract and any controversies arising out of this contract." . . .

> A . . . "consent to jurisdiction" clause[ ] merely specifies a court empowered to hear the litigation, in effect waiving any objection to personal jurisdiction or venue. Such a clause might provide: "[T]he parties submit to the jurisdiction of the courts of New York." Such a clause is "permissive" since it allows the parties to air any dispute in that court, without requiring them to do so.

> . . . A typical choice-of-law provision provides: "This agreement shall be governed by, and construed in accordance with, the law of the State of New York."

## JOHNSTON COUNTY v. R. N. ROUSE & CO.

[331 N.C. 88 (1992)]

Leandra Lederman, Note, *Viva Zapata!: Toward a Rational System of Forum-Selection Clause Enforcement in Diversity Cases*, 66 N.Y.U. L. Rev. 422, 423 n.10 (1991) (citations omitted).

Reviewing the contractual provisions at issue in this case, it is clear that neither section 7.1.1 of the general conditions (choice of law) nor section 7.1.1 of the supplementary general conditions (consent to jurisdiction) conflicts with the agreement to arbitrate contained in section 7.9 of the general conditions. Section 7.9 contains an arbitration clause, providing that "[a]ll claims, disputes and other matters in question between the Contractor and the Owner arising out of, or relating to, the Contract Documents or the breach thereof . . . shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association." Under N.C.G.S. § 1-567.2, this provision is valid and enforceable. Section 7.1.1 of the supplementary general conditions merely provides that "the Contractor [Rouse] agrees to submit *itself* to the jurisdiction of the courts of the State of North Carolina." (Emphasis added.) Despite Johnston County's characterization of the provision as a forum selection clause and the Court of Appeals' treatment of it as such, this provision is a consent to jurisdiction clause, whereby the contractor, in this case Rouse, waived any right to challenge the North Carolina courts' exercise of personal jurisdiction over it. Nor does section 7.1.1 of the general conditions contravene the parties' agreement to arbitrate pursuant to section 7.9 of the general conditions. Section 7.1.1 of the general conditions is a choice of law clause and merely states the parties' agreement to have the validity of the contract and the construction of the contract determined according to "the law of the place where the Project is located," in this case North Carolina.

As recognized by the Court of Appeals below, it is a fundamental rule of contract construction that the courts construe an ambiguous contract in a manner that gives effect to all of its provisions, if the court is reasonably able to do so. *Woods v. Insurance Co.*, 295 N.C. 500, 505-06, 246 S.E.2d 773, 777 (1978); 4 Samuel Williston, *A Treatise on the Law of Contracts* § 619, at 731 (Walter H.E. Jaeger ed., 3d ed. 1961). "[C]ontract provisions should not be construed as conflicting unless no other reasonable interpretation is possible." *Lowder, Inc. v. Highway Comm.*, 26 N.C. App. 622, 639, 217 S.E.2d 682, 693, *cert. denied*, 288 N.C. 393, 218 S.E.2d 467 (1975).

**JOHNSTON COUNTY v. R. N. ROUSE & CO.**

[331 N.C. 88 (1992)]

The Court of Appeals correctly recognized that both Rouse and Johnston County are residents of North Carolina and are therefore subject to the personal jurisdiction of the courts of North Carolina. We do not agree with the Court of Appeals, however, that this fact requires us to conclude that section 7.1.1 of the supplementary general conditions must be construed as more than a consent to jurisdiction clause to avoid rendering that section meaningless under the particular facts of this case. As we have indicated, the contract at issue in this case unambiguously provides an arbitration agreement between the parties. To interpret the contract in any other manner would violate the most fundamental principle of contract construction—that the courts must give effect to the plain and unambiguous language of a contract. *See Woods*, 295 N.C. at 506, 246 S.E.2d at 777 ("[I]f the meaning of the [contract] is clear and only one reasonable interpretation exists, the courts must enforce the contract as written; they may not, under the guise of construing an ambiguous term, rewrite the contract or impose liabilities on the parties not bargained for and found therein."). Moreover, even assuming arguendo that the contract at issue here is ambiguous, we do not agree with the Court of Appeals' reasoning that the parties must have intended section 7.1.1 of the supplementary general conditions as more than a consent by Rouse to the jurisdiction of the North Carolina courts. Where, as here, the consent to jurisdiction clause was drafted and included in the contract prior to the solicitation of competitive bids, we find it more reasonable to conclude that this provision was included to resolve any disputes concerning the exercise of personal jurisdiction over a nonresident contractor who might have been awarded the contract.

Contrary to the Court of Appeals' suggestion, N.C.G.S. § 1-75.4(5) does not render section 7.1.1 of the supplementary general conditions superfluous under our interpretation of the contract. N.C.G.S. § 1-75.4(5) is a portion of North Carolina's long-arm statute. It is a legislative device vesting the North Carolina courts with *in personam* jurisdiction over nonresident defendants. *Dillon v. Numismatic Funding Corp.*, 291 N.C. 674, 231 S.E.2d 629 (1977). The mere fact that N.C.G.S. § 1-75.4(5) authorizes the courts of North Carolina to exercise jurisdiction over a nonresident contracting within the state or contracting to perform services within the state does not end the inquiry of whether the courts may constitutionally exercise *in personam* jurisdiction, however. As we recognized in *Dillon*, resolving the question of the existence of

*in personam* jurisdiction involves a two-step inquiry. *Dillon*, 291 N.C. at 674, 231 S.E.2d at 629. A court attempting to exercise personal jurisdiction over a nonresident defendant must first determine whether a statute, such as N.C.G.S. § 1-75.4(5), permits the court to entertain an action against the defendant. *Dillon*, 291 N.C. at 675-76, 231 S.E.2d at 630-31. If there is a statute authorizing the court to act, the court must further determine whether the nonresident defendant has sufficient, minimum contacts with the state so that maintenance of the suit within the courts of North Carolina will not offend " 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 90 L. Ed. 95, 102 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 85 L. Ed. 278, 283 (1940) ); *Chadbourn, Inc. v. Katz*, 285 N.C. 700, 706, 208 S.E.2d 676, 680 (1974). Where, however, a party has validly consented to the jurisdiction of a court, it is not necessary to conduct this two-step determination because the person has waived any right to object to the court's exercise of *in personam* jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n.14, 85 L. Ed. 2d 528, 540 n.14 (1985) (stating that due process is not offended by the enforcement of a consent to jurisdiction provision that is obtained through free negotiations and is not unreasonable or unjust).

Furthermore, section 7.1.1 of the supplementary general conditions, as we interpret it, is not rendered meaningless as a result of N.C.G.S. § 1-567.17. N.C.G.S. § 1-567.17 provides that "[t]he making in this State of an agreement [to arbitrate] . . . confers jurisdiction on the court to enforce the agreement . . . and to enter judgment on an award thereunder." N.C.G.S. § 1-567.17 (1983). This statute explains that the courts of the State of North Carolina retain *subject matter* jurisdiction over claims that are subject to arbitration, at least for the purposes of enforcing the agreement and entering judgment on an award resulting from arbitration. This statute does not concern the courts' exercise of *in personam* jurisdiction as does the consent to jurisdiction clause at issue in this case.

We conclude that there is no irreconcilable conflict between section 7.9 of the general conditions and section 7.1.1 of the supplementary general conditions. Under section 7.9 of the general conditions, the parties agreed that they will submit to arbitration, according to the Construction Industry Arbitration Rules of the American Arbitration Association, any claims arising out of the

contract documents or a breach thereof. Section 7.1.1 of the supplementary general conditions merely provides that the contractor, Rouse, consents to the jurisdiction of the courts of the State of North Carolina for any action brought to enforce the arbitration agreement or an award resulting from arbitration. Because the parties agreed to arbitrate their disputes pursuant to section 7.9 of the general conditions and Johnston County has failed to show that this agreement to arbitrate was obviated by any other provision of the contract, there was no basis for the trial court to grant a stay of the arbitration proceeding instituted by Rouse. We therefore reverse the decision of the Court of Appeals and remand the case to that court for further remand to the Superior Court, Johnston County, for further proceedings not inconsistent with this opinion.

Reversed and remanded.

Justice LAKE did not participate in the consideration or decision of this case.