UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

MEDCAP CORPORATION,
                    *Plaintiff-Appellant,*

v.

BETSY JOHNSON HEALTH CARE
SYSTEMS, INCORPORATED, formerly
known as Betsy Johnson Memorial
Hospital, Incorporated,
                    *Defendant-Appellee.*

No. 00-2508

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
William A. Webb, Magistrate Judge.
(CA-99-455-5-W)

Argued: June 6, 2001

Decided: August 6, 2001

Before WILKINSON, Chief Judge, TRAXLER, Circuit Judge,
and Andre M. DAVIS, United States District Judge for the
District of Maryland, sitting by designation.

---

Reversed by unpublished per curiam opinion.

---

## COUNSEL

**ARGUED:** Offer Korin, KATZ & KORIN, P.C., Indianapolis, Indiana; J. Mitchell Armbruster, SMITH, ANDERSON, BLOUNT, DORSETT, MITCHELL & JERNIGAN, L.L.P., Raleigh, North Carolina,

for Appellant. L. Diane Tindall, WYRICK, ROBBINS, YATES & PONTON, L.L.P., Raleigh, North Carolina, for Appellee. **ON BRIEF:** Michael E. Weddington, SMITH, ANDERSON, BLOUNT, DORSETT, MITCHELL & JERNIGAN, L.L.P., Raleigh, North Carolina, for Appellant. Benjamin N. Thompson, Kathleen A. Naggs, WYRICK, ROBBINS, YATES & PONTON, L.L.P., Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

MedCap Corporation ("MedCap") appeals from a grant of summary judgment in favor of Betsy Johnson Health Care Systems, Inc. ("the Hospital") on MedCap's claims for breach of contract. We reverse.

### I.

In the early 1990s, the Hospital began negotiations with U.S. Medical Management II ("USMM II"), MedCap's predecessor in interest, for the use of a single photon emission computerized tomography ("SPECT") nuclear medicine unit. A SPECT unit contains a diagnostic camera that creates and measures images from radiation after the injection of a radioactive isotope into the patient's body. At the time of negotiations, the Hospital was using its own nuclear medicine unit capable of producing two-dimensional images, but desired a SPECT unit, which "take[s] a cross-sectional picture" of the body. J.A. 56.

In July 1993, USMM II agreed to provide a SPECT unit for use at the Hospital. The parties' agreement stated that the Hospital would use the unit for five years on a fee-per-use basis with the fees payable at the beginning of each month. At the end of the five-year period, the

Hospital had a lease conversion option whereby it could convert the agreement from a fee-per-use lease into a fair market value lease if the Hospital had performed at least forty procedures per month for a period of thirty-six months. The agreement also provided that USMM II had "an exclusive right to provide [SPECT] service[s] to [the Hospital]," J.A. 20, and "an exclusive right . . . to provide Nuclear Medicine services and facilities to [the] Hospital," J.A. 17.

On November 1, 1994, USMM II wrote the Hospital and accused it of breaching the agreement insofar as the Hospital was still using its own planar nuclear medicine unit for non-SPECT procedures. The letter cited the agreement's exclusivity clause and claimed entitlement to payment "for all nuclear medicine procedures performed by the hospital." J.A. 108. In response to a letter from USMM II, the Hospital began to use the SPECT unit more frequently, but continued to use the planar unit for certain procedures. Disputes over the usage of the SPECT unit continued throughout the life of the agreement.

On July 14, 1999, MedCap filed suit against the Hospital for allegedly violating the agreement's exclusivity clause. The action was filed in the United States District Court for the Eastern District of North Carolina and jurisdiction was based on diversity of citizenship. *See* 28 U.S.C.A. § 1332 (West 1993 & Supp. 2001). The district court referred the case to a magistrate judge by consent of the parties for all proceedings. *See* 28 U.S.C.A. § 636(c) (West 1992 & Supp. 2001). Applying a four-year statute of limitations, the magistrate judge held that the limitations period began to run on November 1, 1994, the date of USMM II's first remonstrance, and expired on November 1, 1998, four years thereafter. Hence, the magistrate judge granted the Hospital's motion for summary judgment on the ground that the suit was barred. MedCap appeals.

## II.

A motion for summary judgment should be granted only if there is no genuine dispute as to an issue of material fact and the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The court must consider the evidence in the light most favorable to the non-moving party

and draw all reasonable inferences from the facts in the non-movant's favor. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The sole issue before the court is whether MedCap's breach of contract action is barred by the statute of limitations.[1] The parties agree that a federal court sitting in diversity must apply the forum state's conflict of laws rules. *See Sokolowski v. Flanzer*, 769 F.2d 975, 977 (4th Cir. 1985). In other words, the district court in North Carolina was obliged to make the same choice of law as would a North Carolina state court, *see Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941), including the choice of a statute of limitations, *see Guaranty Trust Co. v. York*, 326 U.S. 99, 110 (1945). Since the North Carolina courts would apply North Carolina's own statute of limitations to this action, *see Wener v. Perrone & Cramer Realty, Inc.*, 528 S.E.2d 65, 67 (N.C. Ct. App. 2000) (statute of limitations is procedural and consequently the law of the forum must be applied), North Carolina law governs this issue.[2]

The parties also agree that the four-year statute of limitations of N.C. Gen. Stat. § 25-2A-506 (1999), which deals with defaults under lease contracts, applies to this case. What the parties disagree about is when the cause of action accrued. The Hospital contends that the limitations period began to run on November 1, 1994, the date USMM II first informed it of the alleged breach. MedCap, on the other hand, argues that the statute of limitations began to run the first of each month when each installment payment became due.

---

[1] In viewing the evidence in the light most favorable to MedCap, we offer no opinion on whether there was indeed a breach of contract. The sole issue we decide is whether MedCap's action for breach is barred by the statute of limitations.

[2] The agreement contains a choice of law provision providing that the law of Indiana governs its construction. However, this in no way influences the application of North Carolina's statute of limitations. *See Johnston County v. R.N. Rouse & Co.*, 414 S.E.2d 30, 33 (N.C. 1992) (observing that a contractual "choice of law provision[ ] names a particular state and provides that the *substantive* laws of that jurisdiction will be used to determine the validity and construction of the contract") (emphasis added); *see also Cole v. Mileti*, 133 F.3d 433, 437 (6th Cir. 1998) ("[C]ontractual choice-of-law clauses incorporate only substantive law, not procedural provisions such as statutes of limitations.").

To determine the date or dates of accrual, we turn first to the statute itself. Under N.C. Gen. Stat. § 25-2A-506(2), "[a] cause of action for default accrues when the act or omission on which the default . . . is based is or should have been discovered by the aggrieved party." Under North Carolina law, the primary cannon of statutory construction "is to ensure that the purpose of the legislature is accomplished." *Woodson v. Rowland*, 407 S.E.2d 222, 227 (N.C. 1991). To further this objective, a court must consider the language and spirit of the statute, as well as its ultimate purpose. *See Polaroid Corp. v. Offerman*, 507 S.E.2d 284, 290 (N.C. 1998). "[T]he Court will evaluate the statute as a whole and will not construe an individual section in a manner that renders another provision of the same statute meaningless." *Id.*

An underlying purpose of the North Carolina Commercial Code is "to simplify, clarify, and modernize the law governing commercial transactions." N.C. Gen. Stat. § 25-1-102(2)(a) (1999); *see also Bernick v. Jurden*, 293 S.E.2d 405, 410 (N.C. 1982). Part and parcel of this is the lowering of transaction costs by permitting reliance on objective and fair standards of commercial dealing. Without question, commercial transactions are to be made less complicated and expensive by dispensing with arcane rules that no longer reflect the realities of modern commercial life.

With these basics in mind, we begin by noting that the Hospital's interpretation of the statute ignores that cases may arise where multiple installment payments are due and therefore multiple breaches are possible. Here a breach might occur one month when the Hospital would use its own nuclear medicine unit, and not occur again the next month, or for several months, or even for several years. Because Med-Cap would not know until payment was due whether the Hospital had complied with the exclusivity provision or had breached it, MedCap's claim for that month could not accrue before then. In a situation like this one, when the contract is for five years, to require MedCap to bring a lawsuit within four years of the very first month's breach or forfeit all claims would be unreasonable and impractical—it would defeat the legislature's goals of simplifying commercial relations and lowering transaction costs.

Consider this situation: The Hospital in its five-year contract violates the exclusivity requirement during the first month, but complies

each month thereafter for four years. Then four years after this one breach, the Hospital chooses to breach the contract each and every month for the remainder of the contract term. The position of the Hospital would be that the statute of limitations began running at the first month's breach and thereby precluded any action by MedCap for the violations occurring during the last year of the contract. Such a position is obviously not reasonable as this situation underscores the practical requirement that a cause of action not accrue for a particular payment, under the facts of this case, until that payment is due. *See* N.C. Gen. Stat. § 25-2A-506(2) (cause of action does not accrue until the default is discovered or should have been discovered).

This commonsense accrual rule is also clearly stated in North Carolina's pre-Article 2A case law. *See* N.C. Gen. Stat. § 25-1-103 (1999) (principles of the common law supplement the Code unless displaced by a particular provision). Under North Carolina common law,

> [t]he general rule in the case of an obligation payable by installments is that the statute of limitations runs against each installment individually from the time it becomes due, unless the creditor exercises a contractual option to accelerate the debt, in which case the statute begins to run from the date the acceleration clause is invoked.

*United States Leasing Corp. v. Everett, Creech, Hancock, & Herzig*, 363 S.E.2d 665, 669 (N.C. Ct. App. 1988). Because the parties' contract contains no acceleration clause, the general rule of *Everett* is right on point. In the present case, there were sixty installment payments due and therefore sixty possible causes of action for breach of contract if each month the Hospital failed to use the SPECT unit as set forth in the contract. Hence, MedCap may pursue claims accruing within four years of the filing of this action.[3]

---

[3]Not content with pursuing claims accruing within four years of filing suit, MedCap also argues that under *Anton A. Vreede, M.D., P.C. v. Koch*, 380 S.E.2d 615 (N.C. Ct. App. 1989), the statute of limitations did not begin to run until the date that the last installment payment was due. The contract in *Vreede*, however, contained a provision stating that any unpaid balance was due on the final day of the contract. *Id.* at 616. The present agreement had no such provision and therefore *Vreede* is inapplicable.

In arguing that the general rule of *Everett* is inapplicable, the Hospital relies heavily on *Liptrap v. City of High Point*, 496 S.E.2d 817 (N.C. Ct. App. 1998). In *Liptrap*, employees of the City of High Point brought suit against the City after the city council, via a June 1992 resolution, froze annual longevity payments that were supposed to increase in five-year increments. *See id.* at 818. The employees' suit was filed in November 1996, but the trial court dismissed the action as barred by a two-year statute of limitations. The North Carolina court of appeals affirmed the ruling that the statute of limitations began to run on the date the city counsel froze the payments, and rejected the argument that post-1992 refusals to grant requested pay increases amounted to multiple breaches of contract. *See id.* at 819. Contrary to the Hospital's contention, *Liptrap* does not call into doubt the result we have reached. The present case is not controlled by *Liptrap* insofar as the Hospital never announced a definitive, total repudiation of the contract—there was nothing akin to the city council's formal resolution stating that no longevity payments would be made. The Hospital continued to use the SPECT unit and make monthly installment payments, albeit the amounts were lower than MedCap contends they should have been. Accordingly, *Liptrap* is inapplicable.

The Hospital also argues that MedCap's reliance on the rule of *Everett* is misplaced because the agreement is not an installment contract. Pointing to the choice of law clause in the agreement stating that Indiana law governs its construction, the Hospital contends that the rule of *Everett* can apply only if the contract is "one which requires or authorizes the delivery of goods in separate lots to be separately accepted." Ind. Code Ann. § 26-1-2-612(1) (Michie 1992) (defining "installment contract"). Because there was but one delivery of goods in this case, the Hospital argues that there was no installment contract. We believe that the label the Hospital attempts to attach to the agreement is immaterial. North Carolina law governs the running of the statute of limitations and *Everett* attaches no significance to the delivery of goods in separate lots. In fact, *Everett* concerned a lease of office equipment which was apparently delivered in one shipment. *See* 363 S.E.2d at 667. Despite the lack of multiple deliveries, the *Everett* court did not hesitate to apply the general rule even though the controversy surrounded only the installment payments.

### III.

For the foregoing reasons, we reverse the magistrate judge's entry of summary judgment and remand for further proceedings consistent with this opinion.

*REVERSED*