THE PENINSULA PROPERTY OWNERS ASSOCIATION, INC., Plaintiff v. CRESCENT RESOURCES, LLC, Defendant

No. COA04-796

(Filed 21 June 2005)

**1. Appeal and Error— standard of review—Rule 12(b)(6) motion**

Appellate review of a Rule 12(b)(6) motion to dismiss is de novo.

**2. Deeds— property owners association—bylaws and covenants— approval of lawsuit—standing**

Contractual provisions agreed to by members of a property owners association may provide procedural prerequisites or contractually limit the time, place, or manner of asserting claims.

Here, an association (PPOA) lacked the authority to begin a lawsuit against a developer (Crescent) and did not have standing where it had not received approval from two thirds of its members, as required by a valid provision of the by-laws and declaration of covenants.

Appeal by plaintiff from judgment entered 24 February 2004 by Judge W. Robert Bell in Mecklenburg County Superior Court. Heard in the Court of Appeals 2 March 2005.

*Weaver, Bennett & Bland, P.A., by Michael David Bland and Benjamin L. Worley, for plaintiff-appellant.*

*Parker, Poe, Adams & Bernstein, L.L.P., by Irvin W. Hankins, III, and John W. Francisco, for defendant-appellee.*

TYSON, Judge.

The Peninsula Property Owners Association, Inc. (the "PPOA") appeals from judgment entered granting Crescent Resources, LLC's ("Crescent") motion to dismiss and motion for summary judgment based on the PPOA's lack of standing. We affirm.

## I. Background

Beginning in 1989, Crescent, a subsidiary of Duke Power Company, developed "the Peninsula," a planned residential community on Lake Norman near Charlotte, North Carolina. Crescent sold over nine hundred lots in the Peninsula between 1990 and 1 January 1999. As part of the development, Crescent established the PPOA as a North Carolina non-profit corporation. Crescent appointed the original members of the Board of the PPOA ("the Board") and maintained majority control of the Board until 1 January 1999. The Declaration of Covenants, Conditions, and Restrictions ("the Declaration") and the Bylaws of the PPOA ("Bylaws") were created by Crescent. Both the Declaration and the Bylaws contain the following provision:

the affirmative vote of no less than two-thirds (2/3) of all votes entitled to be cast by the Master Association Members shall be required in order for the Master Association to (1) file a complaint, on account of an act or omission of Declarant, with any governmental agency which has regulatory or judicial authority over the Project or any part thereof; or (2) assert a claim against or sue Declarant.

In addition, the Declaration and the Bylaws granted authority to the Board to contract with third parties to install infrastructure for the Peninsula including streets, sewers, sidewalks, the golf course, the clubhouse, parking lots, and street lights. The Board entered into a lease agreement with Duke Power to install and maintain decorative brass street light poles and fixtures. The PPOA made lease payments to Duke Power from annual dues collected from the homeowners.

When Crescent relinquished control of the Board in January 1999, the PPOA's members "discovered" the lease agreement between the PPOA and Duke Power. The Board decided to buy the street light equipment from Duke Power for $1,200,000.00, instead of completing the remaining lease payments totaling $1,500,000.00.

On 1 September 2000, the PPOA and one of its members filed a complaint in Mecklenburg County Superior Court against Crescent and sought certification of the matter as a class action. The PPOA made no attempt to secure a vote of two-thirds of its members prior to instituting this action. The complaint alleged constructive fraud, unfair and deceptive trade practices, and violation of the Interstate Land Sales Full Disclosure Act. The trial court entered an order denying the request for class certification on 26 October 2001. The PPOA subsequently filed a voluntary dismissal without prejudice.

On 30 October 2002, the PPOA filed this action in Mecklenburg County Superior Court. As with the earlier suit, the PPOA did not attempt to garner the required two-thirds vote under the Bylaws and the Declaration. The PPOA asserted claims of constructive fraud and unfair and deceptive trade practices. These causes of action were alleged on behalf of the PPOA itself, rather than individual homeowners. The PPOA filed an amended complaint on 6 January 2003 to correct Crescent's business organization status.

Crescent answered on 24 March 2003 and argued in part that the PPOA lacked standing to assert its claims. Following discovery by both parties, Crescent filed a motion for summary judgment on 9 December 2003 claiming: (1) the PPOA did not have the authority or standing to assert its claims; (2) the PPOA's claims are time barred by the statute of limitations; and (3) the PPOA has not asserted valid claims. Crescent filed an amended motion to dismiss combined with a motion for summary judgment on 3 December 2003 arguing: (1) the trial court lacked jurisdiction; (2) allegations in PPOA's complaint fail

to state a claim upon which relief can be granted; (3) the PPOA does not have authority or capacity to assert its claims; and (4) there are no genuine issues of material fact.

After submission of affidavits, pleadings, and other documents and arguments by both parties, the trial court ruled that the PPOA did "not have standing to file and prosecute this action" and granted Crescent's motion to dismiss and motion for summary judgment. The PPOA appeals.

## II. Issue

The issue on appeal is whether the trial court erred in ruling the PPOA lacked standing and authority to assert its claims against Crescent.

## III. Standard of Review

**[1]** Our review of a motion to dismiss under Rule 12(b)(1) of the North Carolina Rules of Civil Procedure is *de novo. Country Club of Johnson Cty., Inc. v. U.S. Fidelity & Guar. Co.*, 150 N.C. App. 231, 238, 563 S.E.2d 269, 274 (2002) (citation omitted); N.C. Gen. Stat. § 1A-1, Rule 12(b)(1) (2003). "Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the [trial court]." *In re Appeal of the Greens of Pine Glen Ltd. P'ship*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003) (citing *Mann Media, Inc. v. Randolph Cty. Planning Bd.*, 356 N.C. 1, 13, 565 S.E.2d 9, 17 (2002)).

## IV. Subject Matter Jurisdiction

The PPOA argues the trial court erred by: (1) dismissing its complaint for lack of subject matter jurisdiction; and (2) granting Crescent's motion for summary judgment. We disagree.

## A. Standing

**[2]** "Standing refers to whether a party has a sufficient stake in an otherwise justiciable controversy such that he or she may properly seek adjudication of the matter." *American Woodland Indus., Inc. v. Tolson*, 155 N.C. App. 624, 626, 574 S.E.2d 55, 57 (2002) (citations omitted), *cert. denied*, 357 N.C. 61, 579 S.E.2d 283 (2003). "Standing is a necessary prerequisite to a court's proper exercise of subject matter jurisdiction." *Street v. Smart Corp.*, 157 N.C. App. 303, 305, 578 S.E.2d 695, 698 (2003) (internal quotation marks omitted). As the

party seeking to invoke jurisdiction, the PPOA has the burden of proving the elements of standing. *Neuse River Found., Inc. v. Smithfield Foods, Inc.*, 155 N.C. App. 110, 113, 574 S.E.2d 48, 51 (2002) (citations omitted), *disc. rev. denied*, 356 N.C. 675, 577 S.E.2d 628 (2003).

"Standing . . . is . . . properly challenged by a Rule 12(b)(1) motion to dismiss," *Fuller v. Easley*, 145 N.C. App. 391, 395, 553 S.E.2d 43, 46 (2001), and a showing must be made " 'that the plaintiff have been injured or threatened by injury or have a statutory right to institute an action,' " *Bruggeman v. Meditrust Co., LLC*, 165 N.C. App. 790, 795, 600 S.E.2d 507, 511 (2004) (quoting *In re Baby Boy Scearce*, 81 N.C. App. 531, 541, 345 S.E.2d 404, 410, *disc. rev. denied*, 318 N.C. 415, 349 S.E.2d 589 (1986)). "If a party does not have standing to bring a claim, a court has no subject matter jurisdiction to hear the claim." *Estate of Apple v. Commer. Courier Express, Inc.*, 168 N.C. App. 175, 177, 607 S.E.2d 14, 16 (citations omitted), *disc. rev. denied*, 359 N.C. 632, 613 S.E.2d 688 (2005).

Statutes or contract provisions may also prescribe whether a court possesses subject matter jurisdiction. *See* N.C. Gen. Stat. § 55-7-42 (2003) (a shareholder may not commence a derivative action without: (1) "written demand . . . upon the corporation to take suitable action;" and (2) "90 days have expired from the date the demand was made unless, prior to the expiration of the 90 days, the shareholder was notified that the corporation rejected the demand, or unless irreparable injury to the corporation would result by wait-ing for the expiration of the 90 day period."); *see also Allen v. Ferrera*, 141 N.C. App. 284, 287-89, 540 S.E.2d 761, 764-65 (2000) (applying N.C. Gen. Stat. § 55-7-42); *Johnston County v. R. N. Rouse & Co.*, 331 N.C. 88, 92, 414 S.E.2d 30, 33 (1992) ("[P]arties have endeavored to avoid potential litigation concerning judicial jurisdic-tion and the governing law by including in their contracts provisions concerning these matters. Although the language used may differ from one contract to another, one or more of three types of provi-sions (choice of law, consent to jurisdiction, and forum selection), which have very distinct purposes, may often be found in the boiler-plate language of a contract.").

## B. Two-Thirds Voting Provision

The North Carolina Nonprofit Corporation Act ("the Act") is found in N.C. Gen. Stat. § 55A-1-01 *et seq.* Included within the Act are guidelines for corporations' bylaws, which "may contain any provi-

sion for regulating and managing the affairs of the corporation that is not inconsistent with law or the articles of incorporation." N.C. Gen. Stat. § 55A-2-06(b) (2003).

Neither party asserts a discrepancy between the Bylaws and the articles of incorporation. For corporations with members, the bylaws "may include any provisions not inconsistent with law . . . with respect to: . . . (2) Voting rights and the manner of exercising voting rights; (3) The relative rights and obligations of members among themselves, to the corporation, and with respect to the property of the corporation; . . . (7) Any other matters." N.C. Gen. Stat. § 55A-6-20 (2003).

Here, Article III, Section 10 of the Bylaws and Article III, Section 3.3 of the Declaration state, "[t]he affirmative vote of no less than two-thirds (2/3) of all votes entitled to be cast by the [PPOA] members shall be required in order for the [PPOA] to . . . assert a claim against or sue [Crescent]." The two-thirds provision is limited to situations where the PPOA desires to commence legal action against Crescent directly or complain to a governmental agency about Crescent's acts or omissions. The PPOA never attempted to obtain nor actually received the required two-thirds vote by its members approving its decision to file any complaint against Crescent. The trial court dismissed the PPOA's complaint based on the PPOA's lack of authority and standing to assert claims against Crescent without prior approval by two-thirds of its members.

The PPOA argues the extra majority approval by its members is "in violation to the stated public policy to allow entities free access to the courts," and asserts the two-thirds vote requirement "directly inhibits [the PPOA's] ability to recover from [Crescent] for its fraudulent actions by restricting [the PPOA's] access to the court system." In support of its argument, the PPOA first cites N.C. Gen. Stat. § 22B-10 (2003) which provides,

[a]ny provision in a contract requiring a party to the contract to waive his right to a jury trial is unconscionable as a matter of law and the provision shall be unenforceable. This section does not prohibit parties from entering into agreements to arbitrate or engage in other forms of alternative dispute resolution.

The PPOA contends N.C. Gen. Stat. § 22B-10 embodies North Carolina's public policy "to allow persons and entities to have their

day in court." The PPOA further asserts the two-thirds provision is an illegal restraint of the right to sue. *See Duffy v. Insurance Company*, 142 N.C. 100, 103, 55 S.E. 79, 81 (1906) ("By-laws restricting the right to sue in the courts are generally void."). Finally, the PPOA argues the two-thirds provision equates to an exculpatory clause. *See Fortson v. McClellan*, 131 N.C. App. 635, 636, 508 S.E.2d 549, 551 (1998) ("an exculpatory contract will be enforced unless it violates a statute, is gained through inequality of bargaining power, or is contrary to a substantial public interest").

Our *de novo* review of the two-thirds voting provision and the applicable statutory and case law shows the voting requirement is valid and enforceable. *In re Appeal of the Greens of Pine Glen Ltd. P'ship*, 356 N.C. at 647, 576 S.E.2d at 319. In response to the PPOA's first two arguments, the PPOA is not prevented from either obtaining access to the judicial system or asserting its right to file suit. The Bylaws do not require and the PPOA did not "waive [its] right to a jury trial." N.C. Gen. Stat. § 22B-10.

The two-thirds vote provision in the Bylaws and the Declaration does not eliminate the PPOA's right to file a legal action. Both the PPOA and its members enjoy the unlimited ability to file causes of action against Crescent, subject to the required approval by its members. The two-thirds voting provision merely requires the PPOA to garner extra-majority approval from its members before instituting legal action. Crescent does not control the required two-thirds majority vote to sue. Crescent owned only two of the nine hundred lots within the Peninsula at the time the PPOA filed its complaint, less than one-percent of the voting rights.

Exculpatory clauses contractually limit a party's liability. *Hall v. Refining Co.*, 242 N.C. 707, 709-10, 89 S.E.2d 396, 398 (1955). The two-thirds provision does not limit Crescent's liability to the PPOA for *any* alleged wrongdoing. Rather, the PPOA must obtain the required approval from its membership prior to commencing an action against Crescent for alleged wrongdoings. In addition, the PPOA's individual members are not covered by the two-thirds provision and are not without legal recourse against Crescent.

Crescent correctly notes that a two-thirds vote, or other pre-lawsuit requirements, are common. *See* N.C. Gen. Stat. § 55-7-42 (a shareholder may not commence a derivative action without: (1) "written demand . . . upon the corporation to take suitable action;" and (2) "90

days have expired from the date the demand was made unless prior to the expiration of the 90 days, the shareholder was notified that the corporation rejected the demand, or unless irreparable injury to the corporation would result by waiting for the expiration of the 90-day period."); N.C. Gen. Stat. § 47F-1-102(d) (2003) (a homeowner association formed prior to 1 January 1999 may adopt the provisions of the North Carolina Planned Community Act with at least two-thirds member support).

As noted, contractual provisions agreed to by members of the PPOA may provide procedural prerequisites or contractually limit the time, place, or manner for asserting claims. *Johnston County*, 331 N.C. at 92-93, 414 S.E.2d at 33 (choice of law, consent to jurisdiction, and forum selection limitations); *Land Co. v. Byrd*, 299 N.C. 260, 262, 261 S.E.2d 655, 656 (1980) ("where parties to a contract have agreed that a given jurisdiction's substantive law shall govern the interpretation of the contract, such a contractual provision will be given effect"); *Raspet v. Buck*, 147 N.C. App. 133, 135, 554 S.E.2d 676, 678 (2001) (there is a strong public policy favoring arbitration in North Carolina).

Crescent argues prior notice to the PPOA's members shows knowledge and ratification to uphold the validity of the two-thirds provision. Crescent began developing the Peninsula in 1989 and established the PPOA in 1990. The Bylaws were adopted in July 1990. The Declaration was made and entered into in September 1990. Crescent began selling residential lots later that year. In connection with each sale of real property by Crescent to homeowners, the contracts included an express acknowledgment by the homeowners that they "read, understood, and agreed to" terms of the Declaration. Crescent also required prospective lot owners to sign a separate acknowledgment that they had read and understood a copy of the PPOA's previous year's budget, which included lease payments for the street lights.

The PPOA's members also received ample opportunity to review the two-thirds voting requirement in the Declaration and the Bylaws prior to purchasing real property within the Peninsula. Both the Declaration and the Bylaws include provisions permitting review and inspection of the PPOA's books, records, and papers during "reasonable business hours." *See* N.C. Gen. Stat. § 55A-16-02 (2003) ("A member is entitled to inspect and copy . . . any of the records of the corporation . . . ."). All members were further provided access to all financial records pertaining to the PPOA's operating budget, including

the lease payments to Duke Power, which were provided every year during annual meetings. In addition, all prospective purchasers and lot owners were provided record notice, as both the Bylaws and the Declaration were filed with and are available in the county register of deeds office.

The trial court did not err in dismissing the PPOA's complaint for lack of subject matter jurisdiction. The PPOA fails to prove it has standing. *Neuse River Found., Inc.*, 155 N.C. App. at 113, 574 S.E.2d at 51. Our review of the record and applicable law indicates the two-thirds vote provision requiring member approval prior to litigation against Crescent is valid. The PPOA and its members were on notice of this requirement. The PPOA never attempted to obtain nor received the required member approval vote prior to filing this or the previous action. Without the required vote, the PPOA lacked the authority to commence legal proceedings against Crescent and does not possess standing. *Estate of Apple*, 168 N.C. App. at 177, 607 S.E.2d at 16. Without standing, the trial court could not exercise subject matter jurisdiction over its claims. *Street*, 157 N.C. App. at 305, 578 S.E.2d at 698. In light of our holding, we decline to address the trial court's grant of summary judgment in Crescent's favor or the PPOA's remaining assignments of error.

## V. Conclusion

The required two-thirds vote provision is valid and enforceable as a matter of law. The PPOA never attempted to obtain nor received the required approval by its members to institute this action. The trial court properly dismissed the PPOA's complaint for lack of subject matter jurisdiction. The trial court's order is affirmed.

Affirmed.

Judges McGEE and GEER concur.