NO. COA13-1030

NORTH CAROLINA COURT OF APPEALS

Filed:  6 May 2014

GECMC 2006-C1 CARRINGTON OAKS,
LLC,
     Plaintiff,

     v.                              Mecklenburg County
                                     No. 12 CVS 3684
SAMUEL WEISS and EZRA BEYMAN,
     Defendants.


     Appeal by defendant Samuel Weiss from order entered 17 April 2013 by Judge W. Robert Bell in Mecklenburg County Superior Court.  Heard in the Court of Appeals 3 February 2014.


     *McGuireWoods, LLP, by William O. L. Hutchinson, Steven N. Baker, and T. Richmond McPherson, III, for plaintiff-appellee.*

     *Copeland, Richards & Anderson, PLLC, by Shawn A. Copeland and Michael F. Anderson, for defendant-appellant Samuel Weiss.*


     MARTIN, Chief Judge.


     Defendant Samuel Weiss ("defendant Weiss") appeals from an order denying his motion to dismiss the Verified Amended Complaint ("the Complaint") filed by plaintiff GECMC 2006-C1 Carrington Oaks, LLC ("GECMC") pursuant to N.C.G.S. § 1A-1, Rule 12(b)(2).  We affirm.

     GECMC, a North Carolina-based limited liability company,

filed the Complaint in Mecklenburg County Superior Court against defendant Weiss and against Ezra Beyman ("defendant Beyman"), both citizens of Monsey, New York. In its Complaint, GECMC alleged that it was the holder of a promissory note ("the Note") for $28,290,000.00 made by Empirian at Carrington Place, LLC ("Empirian") to Deutsche Bank Mortgage Capital, LLC and its successors and assigns. Defendant Beyman signed the Note as president of Empirian, which is a Delaware-based limited liability company with its principal place of business in Montvale, New Jersey. The Note was secured by a deed of trust "covering certain real property located in Mecklenburg County, North Carolina."

Attached to the Complaint was a Guaranty and Indemnity ("the Guaranty") which expressly references the Note executed by defendant Beyman as President of Empirian. The Complaint alleged that such Guaranty was signed by defendants Beyman and Weiss. The document expressly provides that defendants Beyman and Weiss individually "unconditionally and irrevocably guarantee[] up to $6,240,000.00 of the principal balance of the Loan," until such time as certain specified conditions are met, as when there is no event of default continuing. The Guaranty also contains the following provision, entitled "Submission To Jurisdiction":

> EACH GUARANTOR, TO THE FULL EXTENT PERMITTED BY LAW, HEREBY KNOWINGLY, INTENTIONALLY AND VOLUNTARILY, WITH AND UPON THE ADVICE OF COMPETENT COUNSEL, (A) SUBMITS TO PERSONAL JURISDICTION IN THE STATE IN WHICH THE PROPERTY IS LOCATED OVER ANY SUIT, ACTION OR PROCEEDING BY ANY PERSON ARISING FROM OR RELATING TO THIS GUARANTY, (B) AGREES THAT ANY SUCH ACTION, SUIT OR PROCEEDING MAY BE BROUGHT IN ANY STATE OR FEDERAL COURT OF COMPETENT JURISDICTION SITTING IN THE COUNTY AND STATE IN WHICH THE PROPERTY IS LOCATED, (C) SUBMITS TO THE JURISDICTION OF SUCH COURTS, AND (D) AGREES THAT NEITHER OF THEM WILL BRING ANY ACTION, SUIT OR PROCEEDING IN ANY OTHER FORUM (BUT NOTHING HEREIN SHALL AFFECT THE RIGHT OF LENDER TO BRING ANY ACTION, SUIT OR PROCEEDING IN ANY OTHER FORUM).

According to the Complaint, Empirian defaulted under the terms of the Note and GECMC demanded payment for the indebtedness due, but Empirian refused and still refuses to pay, and defendants Beyman and Weiss defaulted "for failure to pay the amounts due under the Note and the Empirian Guaranty." GECMC claimed that defendants breached their commercial guaranty agreement with GECMC and sought to recover the principal amount of $6,240,000.00, as well as interest accrued, reasonable costs, and attorney's fees.

Defendant Weiss moved to dismiss the Complaint pursuant to N.C.G.S. § 1A-1, Rules 12(b)(2), (b)(4), and (b)(5), for lack of personal jurisdiction, insufficiency of process, and insufficiency of service of process, respectively. After

conducting a hearing, the court denied defendant Weiss's motion to dismiss "to the extent that it [sought] dismiss[al] for insufficiency of process and service of process," but deferred ruling on the motion to dismiss for lack of personal jurisdiction to allow GECMC to "take jurisdictional discovery of [d]efendant Weiss."

In his affidavit and in his briefs submitted in support of his motion to dismiss for lack of personal jurisdiction, defendant Weiss asserted that, although the Guaranty is signed by what "appears to be [his] signature" underneath the word "GUARANTOR" and above the words "SAMUEL WEISS, an individual," defendant Weiss attested that he "was never presented with this Guaranty Agreement," and that he "did not sign and would not have signed this Guaranty Agreement" because he "had no intent to expose [him]self in a manner greater than [his] capital contribution."

In its briefs submitted in support of its opposition to defendant Weiss's motion to dismiss, GECMC acknowledged that defendant Weiss "admitted in his deposition testimony that he did not know the contents of all the documents he executed in connection with [this] transaction," but argued that defendant Weiss's "failure to exercise diligence in executing the loan documents does not provide [defendant Weiss] with a shield to

avoid liability on the Guaranty Agreement after he benefitted financially from the loan transaction before the loan went into default." GECMC also submitted an affidavit from Dmitry Sulsky, an asset manager of a limited liability company, the sole non-member manager of GECMC, and special servicer of the loan that is the subject of this action. Mr. Sulsky's affidavit also included as exhibits documents that he attests "are maintained in the course of the regularly conducted business activities" of his company, which include opinion letters from counsel involved in the transaction at issue that repeatedly refer to defendants Beyman and Weiss as the "Guarantors" of the transaction.

After conducting a hearing and considering the parties' briefs and corresponding affidavits, on 17 April 2013, the trial court entered an order in which it found that, "[a]s a condition of making the loan to Empirian, Deutsche Bank required that [d]efendant Samuel Weiss and [d]efendant Ezra Beyman execute a guaranty agreement," that "[d]efendant Weiss signed and executed a guaranty agreement guaranteeing $6,240,000 of the principal balance of the loan made to Empirian," and that "[t]he guaranty agreement executed by Weiss contains a 'consent to jurisdiction' clause whereby [d]efendant Samuel Weiss 'voluntarily . . . submit[ted] to personal jurisdiction in the State in which the property is located.'" The court then concluded that it had

personal jurisdiction over defendant Weiss "by virtue of the agreement in which [d]efendant Weiss expressly submitted to jurisdiction in the state where the underlying property is situated, North Carolina." The trial court also concluded that its exercise of personal jurisdiction of defendant Weiss "comports with Due Process and [that] the maintenance of suit against Samuel Weiss in North Carolina does not offend traditional notions of fair play and substantial justice." Defendant Weiss appeals from the trial court's 17 April 2013 denial of his motion to dismiss the Complaint pursuant to N.C.G.S. § 1A-1, Rule 12(b)(2). Defendant Beyman, against whom the court entered a default judgment upon GECMC's motion, is not a party to this appeal.

_____

Defendant Weiss first contends the trial court erred when it concluded that it had personal jurisdiction over him because he asserts that the court did not consider competent evidence when it found that defendant Weiss "signed and executed a guaranty agreement guaranteeing $6,240,000 of the principal balance of the loan made to Empirian." Thus, defendant Weiss argues that the court erred by concluding that he "expressly submitted to jurisdiction in the state where the underlying property is situated, North Carolina," "by virtue of the

agreement." We disagree.

Although defendant Weiss's appeal is from an interlocutory order, a defendant has "an immediate right of appeal from the denial of their motion to dismiss for lack of personal jurisdiction." *Retail Investors, Inc. v. Henzlik Inv. Co.*, 113 N.C. App. 549, 552, 439 S.E.2d 196, 198 (1994); *see also* N.C. Gen. Stat. § 1-277(b) (2013) ("Any interested party shall have the right of immediate appeal from an adverse ruling as to the jurisdiction of the court over the person or property of the defendant or such party may preserve his exception for determination upon any subsequent appeal in the cause.").

The general rule requires that the trial court, "as a prerequisite to exercising jurisdiction," *Retail Investors, Inc.*, 113 N.C. App. at 552, 439 S.E.2d at 198, make two basic inquiries: "(1) whether any North Carolina statute authorizes the court to entertain an action against the defendant and if so, (2) whether defendant has sufficient minimum contacts with the state so that considering the action does not conflict with 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Johnston Cnty. v. R.N. Rouse & Co.*, 331 N.C. 88, 96, 414 S.E.2d 30, 35 (1992)).

"A defendant may, however, consent to personal jurisdiction and in such event, the two step inquiry is unnecessary to the

exercise of personal jurisdiction over the defendant." *Id.* "One method of consenting to personal jurisdiction is the inclusion in a contract of a consent to jurisdiction provision." *Id.* "This type of provision does not violate the Due Process Clause and is valid and enforceable unless it is the product of fraud or unequal bargaining power or unless enforcement of the provision would be unfair or unreasonable." *Id.*

"The standard of review to be applied by a trial court in deciding a motion under Rule 12(b)(2) depends upon the procedural context confronting the court." *Banc of Am. Sec. LLC v. Evergreen Int'l Aviation, Inc.*, 169 N.C. App. 690, 693, 611 S.E.2d 179, 182 (2005). When, as here, "both the defendant and the plaintiff submit affidavits addressing the personal jurisdiction issues," *see id.*, "the court may hear the matter on affidavits presented by the respective parties, . . . [or] the court may direct that the matter be heard wholly or partly on oral testimony or depositions." *Id.* at 694, 611 S.E.2d at 183 (alteration and omission in original) (internal quotation marks omitted). "If the trial court chooses to decide the motion based on affidavits, [t]he trial judge must determine the weight and sufficiency of the evidence [presented in the affidavits] much as a juror." *Id.* (alterations in original) (internal quotation marks omitted). "When this Court reviews a decision

as to personal jurisdiction, it considers only whether the findings of fact by the trial court are supported by competent evidence in the record; if so, this Court must affirm the order of the trial court." *Id.* (internal quotation marks omitted).

In the present case, at the hearing on defendant Weiss's motion to dismiss, the court was presented with evidence consisting of defendant Weiss's affidavit, Mr. Sulsky's affidavit, and defendant Weiss's deposition, as well as the exhibits accompanying each. In his deposition, defendant Weiss admitted that he did "about 15, 16 deals" involving real estate in different states with defendant Beyman's company, one of which was the deal at issue in the present case concerning the Carrington Oaks property in Mecklenburg County, North Carolina. Defendant Weiss, who has between 20 and 25 years of experience in real estate management and ownership, said that all of his deals with defendant Beyman's company would follow a particular pattern:

> [T]his is the same example which I used with all the investments that we did with [Empirian] which related to property. Let's assume [a member of defendant Beyman's company] would say that we are about to approach to buy a particular property in a particular state for $30 million, the cost to buy the property. Of the $30 million, he will probably get from the bank approximately 20 to 22 million, about two-thirds, maybe a little bit more. Then the cash equity required to establish such a

deal would be let's say $8 million. From the $8 million, we put up 75 percent, "we" meaning our family, Beyman puts up 25 percent. We get a return on the 75 percent first, and we have a 25 percent upside after everybody's paid back—only if there's an upside. If there's a certain return of 9 percent, 10 percent, 11 percent on the money, then there's an upside, so if there's an upside. That's a generalization of it. Now, if we take $8 million, 75 percent of that is approximately 6 million, then I would call my family partners, I would tell them the deal's coming up now, 6 million equity is required, how much do you feel you want to invest in a particular deal. They would give me the numbers, I would put together the numbers. Sometimes it would be more than enough, sometimes it's a little less, we'd ask somebody else to substitute. That's how the deal was structured. . . . Once that was established, $6 million came out of the closing and was sent to one of the accounts which Beyman established. The documents would be drafted by Beyman's lawyer and reviewed by our lawyer, Elliot Gross. Once the documents were signed, they could give fund instructions, and the funding instructions would follow via a wire.

Defendant Weiss also said that, when he was notified that documents were ready for him to sign regarding a transaction with Beyman's company, he went to a small conference room off of the main lobby of the Dreier Law Firm, where he was met by someone from the firm who "came out with approximately sometimes 30, 40, 45 signature pages" and told him that the papers were "for the transaction," and he would sign those papers. Defendant Weiss said that, in these interactions at the firm, he

would be presented with signature pages for multiple documents for a particular deal and it would take him about five to ten minutes to sign all of the papers presented to him at that time. He said he "understood that these were the documents which the law firm prepared on behalf of the bank [responsible for giving the loan] at the time," and that he did not ask anyone at the firm for copies of any of the documents he signed.

Here, as indicated above, defendant Weiss admitted that, of the "15, 16 deals" he did with defendant Beyman's company, he "did one in North Carolina," and agreed it was the Carrington Oaks property in Mecklenburg County. Defendant Weiss also admitted that his company "[h]ad a loan for [Empirian], and the loan was established as, you know, Carrington Place [sic]." Additionally, defendant Weiss indicated that the procedure he followed to execute the paperwork related to this transaction was consistent with the procedure from his other dealings with defendant Beyman's company. First, defendant Weiss was told by his secretary to go to the Dreier Law Firm to sign documents regarding the transaction. Then, upon his arrival, the firm's receptionist called someone, who met him and escorted him into a small room off of the lobby and presented him with "a bunch of papers" that he was asked to sign. After spending between five and ten minutes signing between 25 to 35 documents, defendant

Weiss then left without asking any questions about the contents of the documents he was signing and without requesting copies of the documents he was signing. Defendant Weiss then admitted in his deposition that the signature that appeared on the signature page of the Guaranty——which had "GUARANTOR" typed above the signature and "SAMUEL WEISS, an individual" typed below it—— "appear[ed] to be [his] signature." Perhaps because defendant Weiss would not definitively admit or deny that he signed the signature page of the Guaranty, plaintiff's counsel questioned defendant Weiss further. When asked whether he was claiming that the document contained a forged signature, whether someone else signed his name, or whether the signature on the Guaranty was an authentic copy of his signature, defendant Weiss repeatedly responded, "I did not say that." Since it is the responsibility of the trial court to determine the weight and sufficiency of this evidence, based on our review of the record, we conclude that there was competent evidence to support the court's finding that defendant Weiss signed and executed the Guaranty that contained the consent to jurisdiction provision that expressly submitted defendant Weiss to the jurisdiction of the State of North Carolina.

We note that defendant Weiss purports to argue that he cannot be bound to the consent to jurisdiction provision of the

Guaranty because he cannot be bound to the terms of an agreement that he signed but did not read. However, it has long been held in this State that "one who signs a paper writing is under a duty to ascertain its contents," *Williams v. Williams*, 220 N.C. 806, 809, 18 S.E.2d 364, 366 (1942), and "in the absence of a showing that he was willfully misled or misinformed by the defendant as to these contents, or that they were kept from him in fraudulent opposition to his request, he is held to have signed with full knowledge and assent as to what is therein contained." *Id.* at 809–10, 18 S.E.2d at 366. Defendant Weiss does not bring forward any argument in his brief that he was "willfully misled or misinformed" about the contents of the documents that comprised the transaction at issue, and suggests only in a footnote and without support that, because he "did not have a contract before him to read" during the five to ten minutes that he chose to spend signing between 25 to 35 signature pages of legal documents in the lobby of a law firm, the proposition that he is charged with knowledge of the contents of the contract at issue is misplaced. However, in the absence of any allegation that the contents of the Guaranty were "kept" from him in fraudulent opposition to his request, we find defendant Weiss's suggestion unpersuasive.

Accordingly, we hold that the trial court did not err when

it concluded that it had personal jurisdiction over defendant Weiss "by virtue of the agreement in which [d]efendant Weiss expressly submitted to jurisdiction in the state where the underlying property is situated, North Carolina." Moreover, because we have determined that defendant Weiss consented to personal jurisdiction by agreement, we need not consider the arguments in his brief concerning whether the court correctly determined that he had sufficient contacts with North Carolina to allow the court to exercise personal jurisdiction over him in this matter. *See Retail Investors, Inc.*, 113 N.C. App. at 552, 439 S.E.2d at 198. Our disposition renders it unnecessary to consider defendant Weiss's remaining arguments on appeal and we decline to do so.

Affirmed.

Judges ELMORE and HUNTER, JR. concur.