MARGARET RAGAN, Executor of GRACE FINCH CATES, Deceased, Plaintiff-
Appellee v. WHEAT FIRST SECURITIES, INC., Defendant-Appellant

No. COA99-959

(Filed 20 June 2000)

**1. Arbitration and Mediation— securities agreement—termination at death of party**

The trial court properly denied defendant's motion to compel arbitration under a securities agreement with a deceased account holder because the agreement and its arbitration clause terminated at her death.

**2. Arbitration and Mediation— securities agreement with estate—not applicable to deceased's account**

The trial court did not err by concluding that an estate's capital resources account agreement with defendant securities broker was not a basis to support a motion to compel arbitration where the dispute concerned defendant's alleged negligence and conversion in unilaterally selling securities in an account which the deceased opened before her death.

Appeal by defendant from order entered 18 March 1999 by Judge Larry G. Ford in Davidson County Superior Court. Heard in the Court of Appeals 27 April 2000.

*Adams Kleemeier Hagan Hannah & Fouts, by Daniel W. Fouts and Peter G. Pappas, for the defendant-appellant.*

*Brinkley Walser, P.L.L.C., by Walter F. Brinkley and David E. Inabinett, for the plaintiff-appellee.*

WYNN, Judge.

In 1982, Grace Finch Cates opened an account with Wheat First Securities, Inc., requiring her to sign a securities account agreement that contained the following arbitration clause:

AGREEMENT TO ARBITRATE CONTROVERSIES—Except with respect to any future dispute or claim arising under the federal securities laws or where this arbitration requirement would violate applicable state law or rule of the United Securities and Exchange Commission, it is agreed that any controversy between us arising out of our relating to this Agreement or transactions

RAGAN v. WHEAT FIRST SEC., INC.

[138 N.C. App. 453 (2000)]

between us shall be submitted to arbitration under the rules of The New York Stock Exchange, Inc., National Association of Securities Dealers or, where appropriate Chicago Board Options Exchange or Commodities Future Trading Commission, as I may elect by sending notice of such election to you by registered mail . . . ."

Following Cates' death—about two years after she signed the agreement—the Clerk of Superior Court, Davidson County, appointed Margaret Ragan as the executrix of her estate. Ragan closed Cates' account and directed Wheat First to transfer the securities into a capital resources account. To open the capital resources account for Cates's estate, Ragan signed a capital resources account agreement that also contained an arbitration clause.

In October 1998, Ragan, in her capacity as executrix of the Estate of Grace Cates, brought this action against Wheat First. The complaint alleged claims for negligence and conversion arising out of Wheat First's sale of securities contained in the account opened by Cates. Specifically, the complaint stated:

3. After Cates died on March 15, 1995, Wheat, through its agent, Alex Galloway, had knowledge of her death shortly after it occurred and knew or should have known that Wheat's authority to sell any securities held in Cates' account had been terminated.

4. Plaintiff is informed and believes that shortly after Cates' death and, after acquiring knowledge of Cates' death and without obtaining authorization from the plaintiff as Cates' executor or any other person having authority to conduct Cates' business affairs, Wheat through its agent, Alex Galloway, sold certain securities ("the Securities") which where held by Wheat in Cates' account . . . . The proceeds from these sales were retained by Wheat and the plaintiff was not notified of the sale.

5. Following the sale of the Securities, they appreciated substantially in value.

6. Wheat reinvested the proceeds of the sale in other securities which did not appreciate in value to the same extent as the Securities originally held by Wheat for plaintiff's testator.

. . . .

9. The estate of Cates has been damaged as a result of the unauthorized sale of the Securities.

In response, Wheat First moved to compel arbitration under the arbitration clause in the Cates' securities agreement, or in the alternative, under the arbitration clause in the Cates Estate's capital resources account agreement. The trial court denied that motion finding that the arbitration clause under the Cates' securities agreement terminated upon the death of Grace Cates, and that arbitration clause under the Cates Estate's capital resources account agreement did not cover the subject matter for arbitration.

From this order, Wheat First appeals.

---

In considering a motion to compel arbitration, the trial court should determine (1) the validity of the contract to arbitrate and (2) whether the subject matter of the arbitration agreement covers the matter in dispute. *See AT&T Technologies, Inc. v. Communication Workers of America*, 475 U.S. 643, 89 L. Ed.2d 648 (1986). Once the "court answers these questions in the affirmative, the parties must take up all additional concerns with the arbitrator." *Elzinga & Volkers, Inc. v. LSSC Corp.*, 838 F. Supp. 1306, 1309 (N.D. Ind. 1993).

I.

[1] On appeal, Wheat First contends that the trial court erroneously denied its motion to compel arbitration because the arbitration agreement under the Cates' securities agreement did not terminate upon Grace Cates' death. We disagree.

Securities brokerage agreements, such as the Cates' securities agreement, constitute contracts "evidencing a transaction involving commerce." 9 U.S.C. § 2; *see PaineWebber Inc. v. Elhai*, 87 F.3d 589 (1st Cir. 1996). Thus, the Federal Arbitration Act preemptively determines the application of arbitration clauses in securities brokerage agreements. *See* 9 U.S.C. § 2 of the Federal Arbitration Act, (stating that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."); *see also Hendrick v. Brown & Root, Inc.*, 50 F. Supp.2d 527, 531-32 (E.D. Va. 1999) (stating that "by its terms the [Federal Arbitration Act] requires the enforcement of arbitration agreements that: (1) are part of a written contract between the par-

ties if the contract or transaction involves interstate commerce; (2) cover the particular dispute at issue; and (3) are valid under general principles of contract law."); *Morrison v. Colorado Permanente Medical Group, P.C.*, 983 F. Supp. 937, 943 (D. Col. 1997) (stating that by "enacting § 2, . . . Congress precluded States from singling out arbitration provisions for suspect status requiring instead that such provisions be placed upon the same footing as other contracts.").

In determining the validity of the arbitration clause in the Cates' securities agreement, issues concerning the arbitrability of the clause are governed by federal law. *See PaineWebber*, 87 F.3d at 593; *Glass v. Kidder Peabody & Co., Inc.*, 114 F.3d 446, 452 (4th Cir. 1997) (holding that federal law for those issues concerning the arbitrability of such agreements governs arbitration agreements covered by the Federal Arbitration). However, state law generally governs issues concerning the validity, revocability, and enforcement of arbitration agreements. *See Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 134 L. Ed.2d 902 (1996) (holding that generally applicable contract defenses, such as fraud, duress or unconscionability, may be applied to invalidate arbitration agreements without contravening the Federal Arbitration Act).

In the subject case, the Cates' securities agreement provides that the substantive law of Virginia applies:

JURISDICTION—This agreement and all transactions made in my account shall be governed by the laws of the Commonwealth of Virginia (regardless of the choice of law rules thereof).

In *King v. Beale*, 96 S.E.2d 765 (Va. 1957), the Virginia Supreme Court addressed a strikingly similar issue to the one at hand— whether an arbitration clause survives the death of a party to the arbitration. In that case, the Virginia Supreme Court held that where the party had entered into a common-law arbitration agreement, the death of one party before the arbitrator's award revoked the submission agreement and terminated the power and authority which that party had granted the arbitrator to enter an award. The Court noted:

[i]n case of the death of a party to an arbitration agreement, the agreement is revoked and the power of the arbitrator is terminated by operation of law upon the universally accepted principle that the death of a principal operates as an instantaneous and

absolute revocation of the agent's power or authority, unless the agency is coupled with an interest.

*Id.* at 770.

The arbitration agreement present in *King*, however, unlike the arbitration clause present in the instant case, was not covered by the Federal Arbitration Act. Thus, *King* is not binding on our determination; rather, the case provides guidance only to the extent that it emphasized the general principles of agency law.

Under those principles, upon the death of the principal, the agent's powers cease unless the agent's authority is coupled with an interest. *See Triplett v. Woodward's Adm'r.*, 35 S.E. 455 (Va. 1900) (holding that the powers of an agent of a testator cease on the death of the latter and he must surrender to the personal representatives all evidences of debts due the estate); *Sturgill v. Virginia Citizens Bank*, 291 S.E.2d 207 (Va. 1982) (holding that because the death of a principal terminates an agent's authority, unless that authority is coupled with an interest, the bank depositor's girlfriend who the depositor had given the authority to draw checks on the depositor's individual account had no authority to write checks on the account after the death of the depositor).

> To constitute a power coupled with an interest, a property in the thing which is the subject of the agency or power must be vested in the person to whom the agency, or power is given, so that he may deal with it in his own name; such that, in the event of the principal's death, the authority could be exercised in the name of the agent.

*Casey v. Walker & Mosby*, 95 S.E. 434, 435 (1918).

In this case, the securities agreement between Wheat First and Cates contained a clause concerning the death of a party which stated that:

> We will give you immediate notice in writing of the death of any one of us. The estate of anyone of us who shall have died shall be liable, and the survivor or survivors shall continue liable, jointly and severally, for any debt balance or loss in the account, or which you may sustain, by reason of the completion of transactions initiated prior to receipt by you of written notice of death of any one of us, or incurred in the liquidation of the account.

> This Agreement shall inure to the benefit of your successors and assigns and shall remain in effect until an authorized member of your firm shall acknowledge in writing the receipt of a written statement from one of us that he or she wishes to terminate the account, at which time the party giving such notice will not be bound for any further transactions made for the account thereafter. However, he or she shall remain bound for any further transactions and for all further deliveries to any of us of any assets in the account, and all communications regarding the account.

In effect, this clause specified the required notice in the event of the death of a party. It does not, however, connote an agency coupled with an interest.

Hence, as an agent, Wheat First's power to act on behalf of Cates terminated at the time of her death, thereby terminating the securities agreement between Wheat First and Cates. It, therefore, follows that the arbitration clause contained in the securities agreement also terminated. Consequently, the trial court properly denied Wheat First's motion to compel arbitration under the Cates' securities agreement.

II.

[2] Wheat First also contends that a valid arbitration agreement existed since the dispute at issue—Wheat First's alleged negligence and conversion arising out of its sale of securities contained in the account opened by Cates—is within the subject matter of the Cates Estate's capital resources account agreement. Again, we disagree.

If the terms of an agreement are unambiguous, the court should not apply rules of construction or interpretation. *See Seoane v. Drug Emporium, Inc.*, 457 S.E.2d 93 (Va. 1995). Rather, it is the duty of the court to merely interpret the language in the agreement according to its plain meaning. *See id.*

In this case, the arbitration clause in the Cates Estate's capital resources account agreement stated that:

> You agree, and by carrying on an account for you, Wheat agrees that all controversies which may arise *between us* concerning any transaction or the construction, performance, or breach of this or any other agreement *between us*, whether entered into prior, on or subsequent to the date hereof, shall be determined by arbitration.

(Emphasis added).

Finding the language in the arbitration clause to be clear and unambiguous, we apply the plain meaning in interpreting this language. Under the agreement, the plain meaning of the language "between us" means between Wheat First and Ragan, as the executrix of Cates' Estate. Therefore, the scope of the arbitration clause applies to any controversy between Wheat First and Ragan arising out of any transactions between Wheat First and Ragan.

However, the dispute at issue in this case is Wheat First's alleged negligence and conversion in unilaterally selling securities in the account which Cates opened before her death. Thus, the dispute in the present action does fit within the scope of the arbitration clause. Consequently, the trial court properly concluded that the Cates Estate's capital resources account agreement was not a basis to support a motion to compel arbitration.

Accordingly, the trial court's judgment denying Wheat First's motion to compel arbitration is,

Affirmed.

. Judges HORTON and SMITH concur.