REBECCA S. RASPET, PLAINTIFF v. TIMOTHY A. BUCK, DEFENDANT

No. COA00-957

(Filed 6 November 2001)

**1. Appeal and Error— appealability—denial of arbitration**

An order denying a demand for arbitration affects a substantial right which might be lost if the appeal is delayed and is thus immediately appealable.

**2. Arbitration and Mediation— arbitration enjoined—multiple business dealings—dispute not within arbitration clause**

The trial court correctly granted plaintiff's motion for a permanent injunction staying arbitration in that the dispute between the parties did not fall within the arbitration clause in the operating agreement of a limited liability company formed by the parties. Plaintiff and defendant had several business connections over a period of years, but there is no evidence that this dispute concerned the affairs, conduct, or operation of the limited liability company. Indeed, there was no evidence that the company became operational after its initial creation.

Appeal by defendant from order entered 22 May 2000 by Judge William H. Freeman in Guilford County Superior Court. Heard in the Court of Appeals 23 May 2001.

*Gordon Law Offices, by Harry G. Gordon, for plaintiff-appellee.*

*Matthew E. Bates, P.A., for defendant-appellant.*

BIGGS, Judge.

Timothy Buck (defendant) appeals from the trial court's order permanently enjoining him from proceeding with arbitration. We affirm.

Rebecca Raspet (plaintiff), and defendant were both employed as investment representatives with Metropolitan Life Insurance Co. in 1995. Later that year, each separately left the company, although they continued to work as investment representatives. Plaintiff was based in Durham, while defendant operated out of Asheboro. At some point in 1995, desiring to handle certain clients jointly, plaintiff and defendant created a limited liability company, titled Plan First, LLC. (Plan First). Each signed an "Operating Agreement" which contained an arbitration clause. The two jointly rented an office in Reidsville, while retaining their separate offices and accounts. Between 1995 and 1997 both plaintiff and defendant became employed by Mariner Financial Services, and later by Select Capital Corporation. While employed with Select Capital, plaintiff was defendant's supervisor. They also managed some Select Capital accounts jointly.

On 9 September 1997, Select Capital terminated defendant with thirty days notice. The company instructed defendant to transfer his clients to another broker no later than 120 days after 10 October 1997. In early February 1998, Select Capital wrote defendant to reiterate that the deadline for his transfer of clients to another broker would be 10 February 1998. Select Capital also directed plaintiff to cease any business relationship with defendant, and not to divide any commissions with defendant. Following defendant's dismissal, his name was removed from jointly held client accounts, which then were changed to reflect that plaintiff had become the sole representative for those accounts.

In July 1998, plaintiff and defendant signed Articles of Dissolution formally dissolving Plan First. Approximately eighteen months later, on 3 January 2000, defendant filed a Demand for Arbitration. Defendant alleged that he and plaintiff had an "oral buy-out agreement," under which plaintiff owed him money for client accounts they had previously managed jointly, and that he had not received this "buy-out" money. Defendant based his demand for arbitration upon an arbitration clause contained in the Operating Agreement for Plan First, which had been signed by both parties when Plan First was formed.

On 6 April 2000, plaintiff filed suit against defendant, seeking damages for slander and defamation, sexual harassment, negligent and intentional infliction of emotional distress, harassment by telephone, breach of contract, indemnity, and unfair and deceptive trade practices. On 6 April 2000, plaintiff also filed a separate motion for a

temporary restraining order (TRO) and for a permanent injunction staying arbitration. Plaintiff obtained a TRO the same day, 6 April 2000. This order was replaced by a permanent injunction on 22 May 2000. In its order granting a permanent injunction staying arbitration, the trial court concluded "that no valid, applicable arbitration agreement exists that binds plaintiff to arbitrate the current dispute between plaintiff and defendant." Defendant appeals from this order.

---

[1] Defendant's appeal from the trial court's order staying arbitration is interlocutory in that plaintiff's claims remain unresolved. *Miller v. Two State Construction Co.*, 118 N.C. App. 412, 455 S.E.2d 678 (1995). Interlocutory orders are not usually appealable; however, this Court has held that the denial of a demand for arbitration is an order that affects "a substantial right which might be lost if appeal is delayed," *Prime South Homes v. Byrd*, 102 N.C. App. 255, 258, 401 S.E.2d 822, 825 (1991), and thus is immediately appealable. *CIT Grp./Sales Fin., Inc. v. Bray*, 141 N.C. App. 542, 539 S.E.2d 690 (2000); *Martin v. Vance*, 133 N.C. App. 116, 514 S.E.2d 306 (1999).

[2] Defendant argues that his dispute with plaintiff is subject to mandatory arbitration under the arbitration clause in Plan First's Operating Agreement. We disagree.

As a general matter, public policy favors arbitration. *See, e.g., Moses H. Cone Hospital v. Mercury Constr.*, 460 U.S. 1, 74 L. Ed. 2d 765 (1983) (ambiguities or doubts as to the scope of arbitrable disputes are to be resolved in favor of arbitration); *Johnston County v. R.N. Rouse & Co.*, 331 N.C. 88, 91, 414 S.E.2d 30, 32 (1992) (noting North Carolina's "strong public policy" in favor of resolving disputes by arbitration). However, before a dispute can be ordered resolved through arbitration, there must be a valid agreement to arbitrate. *United Steelworkers v. Warrior & G. Nav. Co.*, 363 U.S. 574, 4 L. Ed. 2d 1409 (1960); *LSB Financial Services, Inc. v. Harrison*, 144 N.C. App. 542, 548 S.E.2d 574 (2001). Thus, whether a dispute is subject to arbitration is a matter of contract law. *Ragan v. Wheat First Sec., Inc.*, 138 N.C. App. 453, 531 S.E.2d 874, *disc. review denied*, 353 N.C. 268, 546 S.E.2d 129 (2000). Parties to an arbitration must specify clearly the scope and terms of their agreement to arbitrate. *Futrelle v. Duke University*, 127 N.C. App. 244, 488 S.E.2d 635, *disc. review denied*, 347 N.C. 398, 494 S.E.2d 412 (1997). *See also Ruffin Woody and Associates v. Person County*, 92 N.C. App. 129, 374 S.E.2d 165 (1988), *disc. review denied*, 324 N.C. 337, 378 S.E.2d 799 (1989)

(court holds that dispute concerning architect's performance is within arbitration clause in construction contract, stating that determination of arbitrability of specific claim is governed by language of parties' contract). Moreover, a party cannot be forced to submit to arbitration of any dispute unless he has agreed to do so. *AT&T Technologies v. Communications Workers*, 475 U.S. 643, 89 L. Ed. 2d 648 (1986) (citation omitted). *See also United Steelworkers*, 363 U.S. 574, 4 L. Ed. 2d 1409; *LSB Financial Services*, 144 N.C. App. 542, 548 S.E.2d 574 (court finds that securities transaction dispute is subject to arbitration clause, noting that arbitration is required only when parties have previously agreed to submit dispute to arbitration); *Rodgers Builders v. McQueen*, 76 N.C. App. 16, 331 S.E.2d 726 (1985), *disc. review denied*, 315 N.C. 590, 341 S.E.2d 29 (1986).

The question of whether a dispute is subject to arbitration is an issue for judicial determination. *AT&T Technologies*, 475 U.S. 643, 89 L. Ed. 2d 648; and a trial court's conclusion as to whether a particular dispute is subject to arbitration is a conclusion of law, reviewable *de novo* by the appellate court. *Tohato, Inc. v. Pinewild Management, Inc.*, 128 N.C. App. 386, 496 S.E.2d 800 (1998). Whether a dispute is subject to arbitration involves a two pronged analysis; the court must ascertain both (1) whether the parties had a valid agreement to arbitrate, and also (2) whether "the specific dispute falls within the substantive scope of that agreement." *PaineWebber Inc. v. Hartmann*, 921 F.2d 507, 511 (3d Cir. 1990). This Court has adopted the *PaineWebber* analysis. *Ragan*, 138 N.C. App. 453, 531 S.E.2d 874 (in considering a motion to compel arbitration, the trial court should determine the validity of the contract to arbitrate, and whether the subject matter of the arbitration agreement covers the matter in dispute); *Rodgers Builders*, 76 N.C. App. 16, 331 S.E.2d 726 (arbitrability is determined by relationship between claim and subject matter of arbitration clause). In the case *sub judice*, the dispositive issue involves the second prong of the analysis (whether the parties' dispute falls within the purview of the arbitration clause).

The Operating Agreement signed by plaintiff and defendant upon the formation of Plan First included an arbitration clause stating in pertinent part the following:

The Members hereby agree to submit to arbitration any and all matters in dispute and in controversy between them and concerning, directly or indirectly, the affairs, conduct, operation and management of the LLC, to the end that all such disputes

**RASPET v. BUCK**

[147 N.C. App. 133 (2001)]

and controversies be resolved, determined and adjudged by the arbitrators.

Defendant and plaintiff ended their professional relationship in September 1997, when Select Capital terminated defendant's employment with the company. Defendant contends that at that time, plaintiff agreed to an "oral buy-out agreement," requiring plaintiff to pay him for the value of his share of jointly managed accounts. Defendant further argues that this oral agreement is subject to mandatory arbitration under the arbitration clause in the Operating Agreement. Assuming *arguendo*, that such an "oral buy-out agreement" does exist, to be subject to mandatory arbitration, it must be "concerning, directly or indirectly, the affairs, conduct, operation and management of the LLC[.]" The record does not support such a finding.

Defendant has submitted no evidence that Plan First ever became operational after its initial creation, and appears to argue that the creation of Plan First effectively converted all of the parties' subsequent business dealings into Plan First affairs. The record demonstrates that the parties had several business connections over a period of years. Between 1995 and 1998, they were employed by three investment firms, each being employed by the same company for some period of time during the three year period. As Select Capital employees, they appear to have jointly advised several clients. For over a year, the parties rented an office space together for part-time use, but also maintained their separate offices at all times. When their business relationship ended, there may have been various matters for the parties to resolve. The record includes several memoranda pertaining to defendant's exit from Select Capital; all are on Select Capital's paper, and address issues pertaining to Select Capital's termination of defendant's employment. The record does not support defendant's contention that a dispute over fees or commissions arose from the activities of Plan First.

The record further indicates that Plan First, was never funded, did not own any assets, cash, or furniture, had no employees, and paid no taxes. Moreover, Plan First did not have a license to sell securities, and therefore had no customers or clients, and no revenues or income. There is no evidence of any joint transactions, other than investment accounts maintained and supervised by Select Capital. The record does not include documentation that Plan First had any joint bank accounts, jointly assumed debts, jointly owned assets, or jointly undertaken sales or contracts. Thus, we find no evidence that the dispute between the parties concerned the "affairs, conduct, operation [or] management" of Plan First.

**GASKILL v. JENNETTE ENTERS., INC.**

[147 N.C. App. 138 (2001)]

We conclude that the trial court correctly granted plaintiff's motion for a permanent injunction staying arbitration, in that the subject dispute does not fall within the arbitration clause in Plan First's Operating Agreement. Accordingly, we affirm the trial court.

Affirmed.

Judges WYNN and CAMPBELL concur.