SHANNON McDONALD and PEGGY BOWSER, Plaintiffs
v.
BILTMORE HOMES, LLC, TONY J. MORIN, JOHN DOE ONE and JOHN DOE TWO, Defendants
No. COA08-1575.
Court of Appeals of North Carolina.
Filed September 1, 2009.
This case not for publication
Randolph M. James, P.C., by Randolph M. James, for plaintiffs-appellees.
Bagwell Holt Smith Jones & Crowson, P.A., by Nathaniel C. Smith and Jeffrey A. Jones, for defendants-appellants.
CALABRIA, Judge.
Biltmore Homes, LLC, ("Biltmore") and Tony J. Morin, ("Morin"), President, Biltmore Homes, LLC, (collectively "defendants"), appeal the trial court's order entered 1 July 2008 denying their motion to compel arbitration. We affirm.

I. Facts
On 20 March 2006, Shannon McDonald ("McDonald") and Peggy Bowser ("Bowser") (collectively "plaintiffs") executed a purchase agreement for a home in Durham, North Carolina for the cash price of $339,014. On 23 June 2006, the purchase agreement was modified to set the closing date, list home upgrades, and increase the purchase price to $345,485. On 30 June 2006, the parties executed closing documents. Catherine LaVelle ("LaVelle"), a real estate broker and representative of Biltmore, presented plaintiffs with an "Application for the State Specific Warranty, Residential Warranty Corporation  New Home Warranty" ("the application") and told plaintiffs the warranty was a "little extra that we do for our buyers and pay for ourselves." The warranty booklet ("the RWC warranty") states it is a warranty in "lieu of all other express or implied warranties."
Next to paragraph 11 of the application is a place for signatures of the buyers and the builder's representative. This paragraph states "Signatures: I/We have read and understand the RWC Warranty book." The application also contains the following statement:
Both the Purchaser(s) and the Builder must sign this Application acknowledging that:
. . .
(d) this warranty includes a provision for binding arbitration.
Plaintiffs signed the signature lines on the application, but did not receive a copy of the RWC warranty at the time they signed the application. LaVelle's deposition testimony indicates the RWC warranty was on the table in front of plaintiffs at the time the application was signed. It is not disputed that plaintiffs received the RWC warranty after they signed the application, along with other information related to the closing.
In May 2007, plaintiffs reported concerns about defects in their home to Biltmore. Morin wrote a letter addressing plaintiffs' concerns and stating Biltmore would remedy the defects listed in engineering reports requested by Biltmore, but respectfully declined to consider the itemized list submitted by plaintiffs' attorney. In addition, Morin's letter stated Biltmore would not fix those defects deemed outside the scope of Biltmore's warranty obligations. On 2 October 2007, Morin sent a second letter indicating Biltmore was willing to correct the items listed on the engineering reports.
On 13 September 2007, plaintiffs filed a complaint against defendants alleging, inter alia: (1) breach of contract; (2) negligence; (3) breach of implied warranty of workmanlike construction; (4) breach of express warranty; (5) fraudulent inducement and punitive damages; and (6) unfair and deceptive practices.
On 11 December 2007, defendants filed a joint answer and motion to dismiss plaintiffs' complaint under Rule 12(b)(6) for failure to state a claim upon which relief could be granted. One of defendants' affirmative defenses was that plaintiffs had agreed to arbitrate any claims for repairs or defects when they executed and accepted the RWC warranty. Defendants requested dismissal or a stay until the arbitration was completed.
On 1 July 2008, the trial court denied defendants' motion to compel arbitration, concluding as a matter of law that, inter alia: (1) the RWC warranty "is a method by which the builder shifts his liability and caps damages to a third party, RWC Corporation"; (2) the parties could not have a meeting of the minds because plaintiffs did not receive the RWC warranty at the time they signed the application; (3) Biltmore materially misled the plaintiffs when LaVelle told plaintiffs the RWC warranty was something extra and plaintiffs are thus excused from being bound by the arbitration provision of the RWC Warranty; (4) Biltmore did not prove there was a valid agreement to arbitrate; (5) defendants did not prove a validation sticker was attached to the RWC warranty booklet as required by the plain language of the booklet; and (6) because no valid agreement to arbitrate exists, the court denies the motion to compel arbitration. Defendants appeal.[1]

II. Denial of Motion to Compel Arbitration
Defendants argue that the trial court erred by denying their motion to compel arbitration. Defendants believe the evidence demonstrates the parties entered into a binding agreement to arbitrate all disputes regarding defendants' construction of the home. We disagree.
An order denying a motion to compel arbitration is an interlocutory order, which is generally not immediately appealable unless it affects a substantial right. Moose v. Versailles Condo. Ass'n, 171 N.C. App. 377, 381, 614 S.E.2d 418, 422 (2005); N.C. Gen. Stat. § 7A-27(d)(1) (2007). However, "[i]t is well established that because `[t]he right to arbitrate a claim is a substantial right which may be lost if review is delayed,. . . an order denying arbitration is . . . immediately appealable.'" Pineville Forest Homeowners Ass'n v. Portrait Homes Constr. Co., 175 N.C. App. 380, 385-86, 623 S.E.2d 620, 624 (2006) (quoting Howard v. Oakwood Homes Corp., 134 N.C. App. 116, 118, 516 S.E.2d 879, 881 (1999))
When a party claims a dispute is covered by an agreement to arbitrate and the other party denies the existence of an arbitration agreement, the trial court must determine whether an arbitration agreement actually exists. Moose, 171 N.C. App. at 381, 614 S.E.2d at 422; N.C. Gen. Stat. § 1-569.6 (2007). "The question of whether a dispute is subject to arbitration is an issue for judicial determination." Raspet v. Buck, 147 N.C. App. 133, 136, 554 S.E.2d 676, 678 (2001). This judicial determination involves the two-step process of ascertaining: "(1) whether the parties had a valid agreement to arbitrate, and also (2) whether the `specific dispute falls within the substantive scope of that agreement.'" Id.
"[T]he party seeking arbitration must show that the parties mutually agreed to arbitrate their disputes." Routh v. Snap-On Tools Corp., 108 N.C. App. 268, 271-72, 423 S.E.2d 791, 794 (1992). "The trial court's findings regarding the existence of an arbitration agreement are conclusive on appeal where supported by competent evidence, even where the evidence might have supported findings to the contrary." Sciolino v. TD Waterhouse Investor Servs., Inc., 149 N.C. App. 642, 645, 562 S.E.2d 64, 66 (2002). The trial court's determination of whether a dispute is subject to arbitration, however, is a conclusion of law reviewable de novo. Raspet, 147 N.C. App. at 136, 554 S.E.2d at 678.
The law of contracts governs the issue of whether an agreement to arbitrate exists. Routh v. Snap-On Tools Corp., 108 N.C. App. 268, 271, 423 S.E.2d 791, 794 (1992) (citing Southern Spindle and Flyer Co., Inc. v. Milliken & Co., 53 N.C. App. 785, 786, 281 S.E.2d 734, 735 (1981). "[A] valid contract arises only where the parties assent to the same thing in the same sense, and their minds. . . meet as to all the terms. Where there is no mutual agreement as to all of the terms, there is no contract." Sciolino v. TD Waterhouse Investor Servs., Inc., 149 N.C. App. 642, 645-46, 562 S.E.2d 64, 66 (2002)(internal citations and quotations omitted).
In the instant case, LaVelle, as a representative of defendants, asked plaintiffs to sign the application for the RWC warranty, describing it as "a cost-free extra." The RWC warranty limited defendants' warranties and obligations; it did not add to them. Plaintiffs each submitted affidavits stating they were not given the booklet at the same time as the document was signed and they were not told the booklet contained specific terms and conditions. The statements by defendants' representative materially misled plaintiffs as to the contents of the warranty. Therefore, there could be no assent by plaintiffs to the terms of the agreement. The trial court properly concluded that the parties did not have an agreement to arbitrate and, accordingly, properly denied defendants' motion to compel arbitration.

III. Trial Judge's Conclusions of Law
Defendants argue that several conclusions of law contained in the trial court's order denying arbitration are erroneous, and that these erroneous findings foreclosed defendants' right to a trial by jury. Assuming, arguendo, that some of the conclusions contained in the order were erroneous, the only effect of the trial court's order was to deny arbitration. The order did not eliminate any issue that would normally be submitted to a jury. In addition, defendants do not cite any authority in support of their argument. Therefore, this argument is deemed abandoned under N.C.R. App. P. 28(b)(6) (2008). The trial court's order denying defendants' motion to compel arbitration is affirmed.
Affirmed.
Judges WYNN and STROUD concur.
Report per Rule 30(e).
NOTES
[1] John Doe I and John Doe II are not parties to this appeal and were not a party to the motion to compel arbitration.