Southeastern Paper Group, Inc. v. Sunburst Chemicals, Inc., 2012 NCBC 15.

STATE OF NORTH CAROLINA

COUNTY OF GUILFORD

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
11 CVS 8690

SOUTHEASTERN PAPER GROUP,
INC., a North Carolina Corporation,
and
SOUTHEASTERN PAPER GROUP,
INC., a South Carolina Corporation,

Plaintiffs,

v.

SUNBURST CHEMICALS, INC.,

Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**ORDER ON DEFENDANT'S MOTION
TO DISMISS OR TO STAY
PROCEEDINGS AND COMPEL
ARBITRATION**

{1}     This matter is before the court on Defendant's Motion to Dismiss or to Stay Proceedings and Compel Arbitration pursuant to Rule 12(b)(1) of the North Carolina Rules of Civil Procedure ("Motion").  For the reasons stated, ruling on the Motion is DEFERRED pending limited discovery on the contested issue whether there is a binding arbitration agreement.

> *Brooks, Pierce, McLendon, Humphrey & Leonard, LLP, by James C. Adams, II, and Benjamin R. Norman,* and *Ford & Harrison LLP by Matthew J. Gilley and Jeffrey A. Lehrer,* pro hac vice*, for Plaintiffs Southeastern Paper Group, Inc., a North Carolina Corporation and Southeastern Paper Group, Inc., a South Carolina Corporation.*

> *Womble Carlyle Sandridge & Rice, PLLC, by W. Andrew Copenhaver and James A. Dean, and Stoel Rives, LLP, by Jodi L. Johnson,* pro hac vice*, for Defendant Sunburst Chemicals, Inc.*

Gale, Judge.

## I. INTRODUCTION

{2} Plaintiffs Southeastern Paper Group, Inc., a North Carolina corporation ("North Carolina SEPG") and Southeastern Paper Group, Inc., a South Carolina corporation ("South Carolina SEPG") seek injunctive and monetary relief for tortious interference with business relations, civil conspiracy, conversion of property, violation of the North Carolina Trade Secrets Protection Act, and unfair and deceptive trade practices against Defendant Sunburst Chemicals, Inc. ("Sunburst").

{3} The Motion challenges this court's jurisdiction based on an arbitration clause included in a January 2007 "Distribution Agreement" executed by North Carolina SEPG and Sunburst. Plaintiffs contend the person executing the contract for North Carolina SEPG had no authority to do so, so that there is no enforceable arbitration agreement.

{4} Ruling on the Motion is DEFERRED, pending the completion of limited discovery on this isolated issue of whether there is an arbitration agreement as to either or both Plaintiffs. Where the parties dispute the validity of an agreement to arbitrate, the court must first resolve this threshold issue.

## II. PROCEDURAL BACKGROUND

{5} This action was filed in Guilford County Superior Court on August 5, 2011. The matter was designated a mandatory complex business case by the August 15, 2011 order of the Chief Justice of the Supreme Court of North Carolina and assigned to the undersigned judge.

{6} Defendant Sunburst filed its Motion on December 21, 2011. The Motion was fully briefed and the court heard oral arguments on February 23, 2012.

## III. FACTUAL BACKGROUND

{7}    Because Defendant challenges jurisdiction, the court looks to facts taken from the pleadings as well as other evidence presented.[1]

## A. THE PARTIES

{8}    Plaintiff North Carolina SEPG is a North Carolina corporation[2] with its main office in Browns Summit, Guilford County, North Carolina.

{9}    Plaintiff South Carolina SEPG is a South Carolina corporation with its main office in Spartanburg, South Carolina.

{10}    Defendant Sunburst is a Minnesota corporation with its principal place of business in Bloomington, Minnesota.  It conducts business and has employees located in the state of North Carolina, including Guilford County.  Sunburst supplied products to SEPG from approximately 2001 through 2011.

{11}    The Motion seeks to compel arbitration as to all claims, based on an agreement executed by North Carolina SEPG which includes an arbitration clause ("Distribution Agreement"). Sunburst contends this agreement binds all parties to arbitrate any dispute which "arises out of or is related to this Agreement or the breach thereof."[3]  SEPG disputes the validity of the Distribution Agreement, and specifically contends that SEPG cannot be bound to arbitrate when its signatory to the document had no authority to bind the corporation.  Sunburst contends that even this initial dispute as to the validity of the Distribution Agreement must be submitted to arbitration, rather than being resolved by the court.

---

[1] In determining whether parties had a valid agreement to arbitrate, the court may consider evidence as to facts that are in dispute. *Slaughter v. Swicegood*, 162 N.C. App. 457, 461, 591 S.E.2d 577, 580 (2004).

[2] The parties dispute whether the alleged arbitration agreement is binding as to both North Carolina SEPG and South Carolina SEPG, and whether the two organizations were legally distinct corporations.  Throughout this discussion, "SEPG" used alone will refer to North Carolina SEPG and South Carolina SEPG collectively.

[3] Exh. 1 to Def.'s Amended Compl..

## B. THE DISTRIBUTION AGREEMENT

{12}  The Distribution Agreement was signed by Jerald Shadley, SEPG Sales Manager, in January 2007.[4]  The Distribution Agreement includes a paragraph providing that:

> Any controversy or claim between SUNBURST and DISTRIBUTOR which in any way arises out of or is related to this Agreement or the breach thereof, shall be settled by final and binding arbitration in accordance with the rules of the American Arbitration Association then in force. The Arbitration hearings shall be held in Minneapolis, Minnesota.[5]

{13}  Plaintiffs dispute that the Distribution Agreement is valid.[6]  The various affidavits offered by the Parties offer divergent perspectives.  Accordingly, if the court has authority to decide the issue of enforceability of the agreement, it must resolve disputed issues of fact.

{14}  Sunburst asserts that Shadley's signature bound SEPG to the Distribution Agreement for several reasons.[7]  It asserts, *inter alia,* that Shadley had authority as North Carolina SEPG's sales manager, that Gregory Rizzi instructed Sunburst to deal with Shadley, and that a letter later sent by Shadley to Sunburst confirmed Shadley's authority.

{15}  There is no dispute that Shadley actually signed the Distribution Agreement.  In January 2007, Shadley met with Sunburst representatives in North Carolina, during which meeting he signed the Distribution Agreement.[8]  Shadley believed he was signing an agreement related only to training North Carolina SEPG sales staff for a specific Sunburst customer.  He contends he did not have authority to enter into a contract with a supplier related to North Carolina SEPG's customers.[9]

---

[4] Exh. 1 to Def.'s Amended Ans. to Amended Compl. and Counterclaims.
[5] *Id.* ¶ 14.
[6] Def.'s Mem. of Law in Support of Mot. to Dismiss, 12-13; Pls.' Resp. to Def.'s Mot. to Dismiss 2-6.
[7] Def.'s Reply Mem. of Law in Support of Mot. to Dismiss 6-9.
[8] Aff. Jerald Shadley ¶ 3.
[9] *Id.* ¶ 6.

{16} Rizzi was North Carolina SEPG Director of Sales, and was Shadley's supervisor in January 2007.[10] Shadley was a sales manager, overseeing approximately twelve sales representatives.[11] Rizzi disclaims his own authority to sign distribution contracts on behalf of SEPG, and testifies that he never gave similar authority to Shadley.[12]

{17} In his role as South Carolina SEPG Division Manager for Warehouse/Laundry, John Covington participated in the negotiation of pricing terms with Sunburst.[13] Covington testified that consolidation of Sunburst's pricing structure for South Carolina SEPG and North Carolina SEPG actually benefitted North Carolina SEPG in early 2011, and there was no suggestion at the time that Sunburst believed a Distribution Agreement was relevant to the change.[14]

{18} Jerry Billingsley, former South Carolina SEPG Equipment Service Manager, testified that he was aware of the Distribution Agreement, that South Carolina SEPG received benefits related to the Distribution Agreement, and that the Distribution Agreement was generally discussed within South Carolina SEPG during 2007 and 2008.[15]

{19} Sunburst President Robert Laughlin was familiar with a distribution partnership between Sunburst and South Carolina SEPG going back to August 2001.[16] With regard to the January 2007 Distribution Agreement, Laughlin testified that Rizzi told Sunburst that Shadley was responsible for discussions related to the arrangement.[17] South Carolina SEPG purportedly received substantial benefits from Sunburst due to the January 2007 Distribution Agreement.[18]

---

[10] Aff. Gregory Rizzi ¶ 4.
[11] *Id.*
[12] *Id.* ¶¶ 4-5.
[13] Aff. John Covington ¶ 6.
[14] Aff. John Covington ¶ 6.
[15] Aff. Jerry Billingsley ¶ 8.
[16] Aff. Robert Laughlin (August 11, 2011) ¶ 4.
[17] Aff. Robert Laughlin (December 21, 2011) ¶ 14.
[18] *Id.* ¶¶ 7-8.

{20}   On August 1, 2011 SEPG ended its relationship with Sunburst and began to use Ecolab as a supplier.  Thereafter, several North Carolina SEPG employees went to work for Sunburst, and Sunburst allegedly solicited, obtained, and used SEPG customer lists to solicit SEPG customers.[19]  SEPG filed claims against Sunburst in Guilford County Superior Court on August 5, 2011, asserting tortious interference with business relations, civil conspiracy, conversion of property, violation of the North Carolina Trade Secrets Act, and unfair and deceptive trade practices.[20]

## IV. STANDARD OF REVIEW

{21}   A motion to dismiss pursuant to Rule 12(b)(1) is not viewed in the same manner as a motion to dismiss for failure to state a claim upon which relief can be granted.  *Data Gen. Corp. v. County of Durham*, 143 N.C. App. 97, 102, 545 S.E.2d 243, 247 (2001); *Tart v. Walker*, 38 N.C. App. 500, 502, 248 S.E.2d 736, 737 (1978). Matters outside of the pleadings may be considered and weighed by the court in determining the existence of jurisdiction over the person or the subject matter. *Data Gen. Corp.*, 143 N.C. App. at 102, 545 S.E.2d at 247; *Tart*, 38 N.C. App. at 502, 248 S.E.2d at 737.

{22}   Here, the Parties dispute the validity of the agreement giving rise to the right to arbitration.  If a party refuses to arbitrate upon its opponent's motion, "the court shall proceed summarily to decide the issue and order the parties to arbitrate unless it finds that there is no enforceable agreement to arbitrate." N.C. Gen. Stat. § 1-569.7(a)(2012).  Therefore, the court must determine whether the agreement is valid and binding on the Parties before making an assessment as to whether it may compel arbitration of any particular dispute.

{23}   The court has therefore examined the pleadings as well as additional evidence submitted in connection with Defendant's Motion.

---

[19] Pls.' Resp. to Def.'s Mot. to Dismiss 8.
[20] Amended Compl. ¶¶ 41-92.

## V. ANALYSIS

{24}   While the Federal Arbitration Act favors enforcement of arbitration provisions, a prerequisite is the existence of a valid agreement to arbitrate. *See, e.g.,* 9 U.S.C. § 2 (providing that, under the Federal Arbitration Act, a contractual arbitration provision "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."); *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. ___, ___, 130 S. Ct. 2847, 2855–56 (2010) ("Where the dispute at issue concerns contract formation, the dispute is generally for courts to decide."); *Routh v. Snap-On Tools Corp.,* 108 N.C. App. 268, 271–72, 423 S.E.2d 794 (1992) ("The law of contracts governs the issue of whether there exists an agreement to arbitrate. Accordingly, the party seeking arbitration must show that the parties mutually agreed to arbitrate their disputes.") (citation omitted).

{25}   The presumption favoring arbitration applies only where it derives its legitimacy from a judicial conclusion that the parties' express agreement to arbitrate was validly formed. *Granite Rock,* 561 U.S. at ___, 130 S. Ct. at 2859–60. "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S. Ct. 1347, 1353 (1960).

{26}   Therefore, the court must first consider relevant evidence to determine whether the Parties had a valid, enforceable agreement.  "[P]ublic policy favoring arbitration does not come into play unless a court first finds that the parties entered into an enforceable agreement to arbitrate." *Evangelistic Outreach Ctr. v. Gen. Steel Corp.*, 181 N.C. App. 723, 726, 640 S.E.2d 840, 843 (2007).

{27}   The initial questions of contract formation are determined as a matter of state law. *Capps v. Blondeau*, 2010 NCBC 7 ¶ 43 (N.C. Super. Ct. April 13, 2010), http://www.ncbusinesscourt.net/opinions/2010_NCBC_7.pdf, *aff'd*, 719 S.E.2d 256 (N.C. Ct. App. 2011). "The [Federal Arbitration Act] only preempts state rules of contract formation which single out arbitration clauses and unreasonably burden

the ability to form arbitration agreements . . . with conditions on (their) formation and execution . . . which are not part of the generally applicable contract law." *Park v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 159 N.C. App. 120, 122, 582 S.E.2d 375, 378 (2003) (citations and quotation omitted).

{28}   In North Carolina, the burden of proving that an arbitration agreement exists is with the party seeking to compel arbitration. *Slaughter v. Swicegood*, 162 N.C. App. 457, 461, 591 S.E.2d 577, 580 (2004).  This party must persuade the court that the parties mutually agreed to arbitrate their disputes. *Id.. See Thompson v. Norfolk S. Ry. Co.*, 140 N.C. App. 115, 120, 535 S.E.2d 397, 400 (2000); *Routh,* 108 N.C. App. at 271—72, 423 S.E.2d at 794 (1992).  The trial court's finding with regard to whether there existed an arbitration agreement is a question of fact, to be determined by the trial court upon competent evidence.  *Id.*  Such a determination is conclusive on appeal, even where the evidence might support findings to the contrary.  *Id.*; *Sciolino v. TD Waterhouse Investor Servs., Inc.*, 149 N.C. App. 642, 645, 562 S.E.2d 64, 66 (2002).

{29}   North Carolina law controls the initial issue of contract formation.  The Distribution Agreement purports to subject all claims under the contract to determination under Minnesota law.  However, the primary question at this stage is whether the Parties came to a valid agreement.

{30}   Neither party argues the agreement was intended to govern commercial activity in Minnesota, and the record suggests that Shadley signed the agreement in North Carolina.[21]  Even if the Distribution Agreement were actually signed during a meeting of party representatives in Minnesota, if performance is to be wholly outside of the state where the agreement was made, the law of the place of performance governs. *Cocke v. Duke Univ.*, 260 N.C. 1, 8, 131 S.E.2d 909, 913 (N.C. 1963).

{31}   Therefore, this court must first resolve whether, under North Carolina law, the Parties came to an agreement to arbitrate.

---

[21] Aff. Jerald Shadley ¶ 3.

{32} The Parties contest several issues controlling this initial decision. At this point, a question of fact remains as to whether Shadley had authority to bind North Carolina SEPG, and whether North Carolina SEPG ratified the Distribution Agreement by its conduct in response to the Agreement.

{33} The court is mindful of the limitations on the use of discovery by a party opposing arbitration. *See Cyclone Roofing Co. v. David M. LaFave Co.*, 312 N.C. 224, 229–30, 321 S.E.2d 872, 876–77 (1984), *citing Carcich v. Rederi A/B Nordie*, 389 F. 2d 692, 696 n. 7 (2nd Cir. 1968).

{34} However, the court believes it appropriate to allow a discovery period ending on April 27, 2012 limited to the following specific issues:

(1) whether the Distribution Agreement is an enforceable contract executed by one with authority;

(2) whether Plaintiffs' conduct has affirmed and/or ratified the arbitration clause of the Distribution Agreement; and

(3) whether any arbitration agreement was understood to apply to both North Carolina SEPG and South Carolina SEPG.

{35} Upon conclusion of this period, the court will decide the matter on written submissions, including sworn testimony, affidavits and authenticated documents.

{36} The Parties shall file simultaneous supplemental briefs on May 29, 2012.

{37} If the court determines that there is a valid arbitration agreement, the court will then address the scope of the arbitration clause and whether claims here should be decided by the court or by the arbitrator.

{38} The extent to which the arbitration clause applies to claims by both plaintiffs is also disputed. Specifically, Plaintiffs contend the Distribution Agreement cannot cover claims related to Defendant's solicitation of Plaintiffs' customers,[22] while Defendant asks the court to apply the arbitration clause to any

---

[22] Pls.' Resp. to Def.'s Mot. to Dismiss 9.

and all claims by Plaintiffs.[23]  This issue, however, deals with the scope of the arbitration clause rather than the issue of its enforceability *vel non*. [24]

## VI. CONCLUSION

{39}  NOW THEREFORE, based upon the foregoing, it is ORDERED that the motions to stay judicial proceedings and to compel arbitration propounded in this matter by Defendant Sunburst Chemicals, Inc. are DEFERRED.  This action shall proceed accordingly.

IT IS SO ORDERED, this 13th day of March, 2012.

---

[23] Def.'s Memo. of Law in Support of Mot. to Dismiss 15.

[24] Resolution of whether a particular dispute is within the scope of the arbitration agreement is generally a decision for the court. *See Green v. Short*, 2007 NCBC 8 (N.C. Super. Ct. 2007), *citing Raspet v. Buck*, 147 N.C. App. 133, 136, 554 S.E.2d 676, 678  (2001).  As to this question, the court considers:  (1) whether the parties had a valid agreement to arbitrate, and (2) whether the specific dispute between the parties falls within the substantive scope of their agreement.  *Raspet*, 147 N.C. App. at 136, 554 S.E.2d at 678.  Unless a contractual provision "clearly and unmistakably" provides that the arbitrator will decide which disputes the parties will agree to arbitrate, "the question of arbitrability ... is undeniably an issue for judicial determination."  *Peabody Holding Co., LLC v. UMW*, 665 F.3d 96, 102 (4th Cir. Va. 2012), quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649, 106 S. Ct. 1415, 1418 (1986).