IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA17-958

Filed: 7 August 2018

Wake County, No. 16 CVS 7460

AVR DAVIS RALEIGH, LLC, Plaintiff

v.

TRIANGLE CONSTRUCTION COMPANY, INC., Defendant

Appeal by defendant from order entered 22 February 2017 by Judge W. David Lee in Wake County Superior Court. Heard in the Court of Appeals 5 March 2018.

*Wyche, P.A., by William M. Wilson, III, for plaintiff-appellee.*

*Smith Moore Leatherwood LLP, by Matthew Nis Leerberg, Bradley M. Risinger, and Robert A. deHoll, for defendant-appellant.*

CALABRIA, Judge.

Triangle Construction Company, Inc. ("defendant") appeals from an order denying its motion to dismiss and to compel arbitration. After careful review, we reverse the trial court's order and remand for entry of an order compelling arbitration.

I. Factual and Procedural Background

In 2013, AVR Davis Raleigh, LLC ("plaintiff") hired defendant to construct a multi-building apartment complex on land owned by plaintiff in Raleigh, North Carolina. On 31 October 2013, the parties entered into a contract for defendant to construct three buildings containing 243 apartments, at a guaranteed maximum

AVR Davis Raleigh, LLC v. Triangle Constr. Co., Inc.

*Opinion of the Court*

price of $22,506,113.27. Defendant agreed to achieve substantial completion of the project within 420 days of commencement, with the timeline subject to adjustment as provided by the contract.

On 8 June 2016, plaintiff filed a complaint against defendant in Wake County Superior Court, alleging, *inter alia*, that defendant had failed to adhere to the contractual timeline and failed to pay subcontractors, resulting in substantial damages to plaintiff. Plaintiff asserted claims for breach of contract and breach of agreement to defend and indemnify, and sought $2,708,254.96 in damages. Defendant subsequently filed an answer asserting multiple affirmative defenses and counterclaims for breach of contract, foreclosure of a mechanic's lien, quantum meruit, unjust enrichment, and unfair and deceptive trade practices. Defendant alleged, *inter alia*, that plaintiff had failed to approve and pay for 112 changes to the scope of work under the contract, which caused project delays and approximately $2 million in total damages to defendant. In addition to its damages for the 112 change orders, defendant also sought $159,381.00 for unpaid payment applications and $1,125,306.00 for unpaid retainage.

On 27 July 2016, defendant filed notice of removal to the United States District Court for the Eastern District of North Carolina. The following day, defendant filed a motion to dismiss plaintiff's complaint and to compel arbitration. Defendant

AVR Davis Raleigh, LLC v. Triangle Constr. Co., Inc.

*Opinion of the Court*

asserted that all of the parties' claims must be arbitrated, pursuant to a clause in the contract providing for the following method of binding dispute resolution:

> Arbitration of claims under $500,000 with litigation of claims over $500,000. In the event there are several claims under $500,000, but the aggregate of all claims exceeds $500,000, all the claims shall be arbitrated.

Due to a lack of diversity jurisdiction, on 1 September 2016, the United States District Court entered an order remanding the case to Wake County Superior Court. On 19 October 2016, defendant filed a motion in Wake County Superior Court, as above, seeking to dismiss plaintiff's complaint and to compel arbitration.

Following a hearing, on 22 February 2017, the trial court entered an order denying defendant's motion to dismiss and to compel arbitration. The trial court found that, "in its quest to meet the jurisdictional threshold necessary to compel arbitration," defendant had split its demand for damages for breach of contract by characterizing the 112 change orders as 112 separate claims. However, the trial court determined that separating "each item or segment of labor and/or materials that may have exceeded the original scope of the work into multiple evidentiary components . . . would require the court to construe the contract in an awkward, contrived and unreasonable manner." The trial court further found that the parties' dispute resolution provision "simply did not address the particular facts and circumstances" of the instant case:

> The hybrid language can be construed to only address three

> possibilities: (1) Claims under $500,000.00 (arbitration); (2) claims over $500,000.00 (litigation); and (3) several claims under $500,000.00 but which in the aggregate exceed $500,000.00 (arbitration). It is reasonable to conclude that the language used does not address the circumstances of the present case where there are **both** (1) claims which, indisputably, exceed $500,000.00, *and* (2) several claims which, arguably at best, are under $500,000.00 but which in the aggregate exceed $500,000.00.

The trial court therefore denied defendant's motion to dismiss and to compel arbitration, concluding that "the parties have not selected a method of binding dispute resolution other than litigation so that the claims must, both as a matter of law and in accordance with the written agreement be resolved in a court of competent jurisdiction."

Defendant appeals.

## II. Motion to Compel Arbitration

On appeal, defendant contends that the trial court erred in denying its motion to dismiss and to compel arbitration. We agree.

## A. Interlocutory Appeal

As an initial matter, we note that although the trial court's order is interlocutory, "the denial of a demand for arbitration is an order that affects a substantial right which might be lost if appeal is delayed, and thus is immediately appealable." *Raspet v. Buck*, 147 N.C. App. 133, 135, 554 S.E.2d 676, 677 (2001) (citation and quotation marks omitted); *see also* N.C. Gen. Stat. § 1-567.67(a)(1)

AVR Davis Raleigh, LLC v. Triangle Constr. Co., Inc.

*Opinion of the Court*

(2017) (providing that an appeal may be taken from "[a]n order denying an application to compel arbitration"). Accordingly, defendant's appeal is properly before this Court.

## B. Discussion

"North Carolina has a strong public policy favoring the settlement of disputes by arbitration. Our strong public policy requires that the courts resolve any doubts concerning the scope of arbitrable issues in favor of arbitration." *Johnston Cty. v. R.N. Rouse & Co.*, 331 N.C. 88, 91, 414 S.E.2d 30, 32 (1992). "This is true whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Id.* (citations and quotation marks omitted).

"[B]efore a dispute can be ordered resolved through arbitration, there must be a valid agreement to arbitrate." *Raspet*, 147 N.C. App. at 135, 554 S.E.2d at 678. Whether a dispute is subject to arbitration is a question of contract interpretation to be answered by the trial court. *Id.* at 136, 554 S.E.2d at 678. "[A] trial court's conclusion as to whether a particular dispute is subject to arbitration is a conclusion of law," which we review *de novo* on appeal. *Id.* To determine whether a dispute is subject to arbitration, the trial court must engage in a two-pronged analysis to ascertain "(1) whether the parties had a valid agreement to arbitrate, and also (2) whether the specific dispute falls within the substantive scope of that agreement."

AVR Davis Raleigh, LLC v. Triangle Constr. Co., Inc.

*Opinion of the Court*

*Id.* (citation and quotation marks omitted). It is the second step of the trial court's inquiry "where the presumption in favor of arbitration exists." *Sloan Fin. Grp., Inc. v. Beckett*, 159 N.C. App. 470, 479, 583 S.E.2d 325, 331 (2003).

In the instant case, the first of these questions is answered by the plain language of the binding dispute resolution provision in the parties' modified form contract. Section 13.2 states:

> § 13.2 BINDING DISPUTE RESOLUTION
> For any Claim subject to, but not resolved by mediation pursuant to Section 15.3 of AIA Document A201 – 2007, the method of binding dispute resolution shall be as follows:
>
> *(Check the appropriate box: If the Owner and Contractor do not select a method of binding dispute resolution below, or do not subsequently agree in writing to a binding dispute resolution method other than litigation, Claims will be resolved by litigation in a court of competent jurisdiction:)*
>
> [ ] Arbitration pursuant to Section 15.4 of AIA Document A201 – 2007
>
> [ ] Litigation in a court of competent jurisdiction
>
> [ X ] Other *(Specify)*
>
> Arbitration of claims under $500,000 with litigation of claims over $500,000. In the event there are several claims under $500,000, but the aggregate of all claims exceeds $500,000, all the claims shall be arbitrated.

The first sentence of the binding dispute resolution provision clearly demonstrates that the parties agreed to arbitrate "claims under $500,000." Admittedly, the second sentence is far less clear. Nevertheless, since the parties had

AVR Davis Raleigh, LLC v. Triangle Constr. Co., Inc.

*Opinion of the Court*

a valid agreement to arbitrate, the dispositive issue is whether the instant "dispute falls within the substantive scope of that agreement." *Raspet*, 147 N.C. App. at 136, 554 S.E.2d at 678 (citation and quotation marks omitted). Indeed, "the problem at hand is the construction of the contract language itself . . . ." *Johnston Cty.*, 331 N.C. at 91, 414 S.E.2d at 32.

Unsurprisingly, the parties disagree over the proper interpretation of the binding dispute resolution provision. At the hearing on defendant's motion to dismiss and to compel arbitration, plaintiff argued that there is a $500,000 "threshold . . . [o]ver that we're litigating; under that, we're arbitrating." According to plaintiff, the provision requires "litigation of all claims when at least one claim exceeds $500,000 and provides for arbitration when no single claim exceeds $500,000 (regardless of the total)." By contrast, defendant interprets the provision to mean that whenever there are several claims that are worth less than $500,000 individually, but more than $500,000 in the aggregate, then all of the claims must be *arbitrated.*

The trial court agreed with plaintiff's interpretation, and accordingly denied defendant's motion. This decision was in error.

In its order, the trial court recognized the "ambiguities" created by the "inartfully drafted dispute resolution language[.]" We agree that there are several reasonable interpretations of the provision, including those favored by both parties. However, faced with such "doubts concerning the scope of arbitrable issues," the trial

AVR Davis Raleigh, LLC v. Triangle Constr. Co., Inc.

*Opinion of the Court*

court should have deferred to North Carolina's strong policy favoring arbitration. *Id.* Instead, the court erroneously concluded "that the parties have not selected a method of binding dispute resolution other than litigation" and denied defendant's motion to dismiss and to compel arbitration. Accordingly, we reverse the trial court's order and remand for entry of an order compelling arbitration. *See, e.g., Ellison v. Alexander*, 207 N.C. App. 401, 415, 700 S.E.2d 102, 112 (2010).

REVERSED AND REMANDED.

Chief Judge McGEE concurs.

Judge MURPHY concurs in a separate opinion.

MURPHY, Judge, concurring.

While I concur in the Majority's opinion based on the current status of our caselaw, I write separately to emphasize the importance of the right to a jury trial in civil proceedings under the North Carolina Constitution. "[A] frequent Recurrence to fundamental Principles is absolutely necessary to preserve the Blessings of Liberty." N.C. Const. of 1776, Declaration of Rights, § 21. A recurrence of our fundamental principles is needed here.

Each iteration of our Constitution has explicitly guaranteed the right to a jury trial for civil cases respecting property:

> "That in all controversies at Law respecting Property, the ancient Mode of Trial by Jury is one of the best Securities of the Rights of the People, and ought to remain sacred and inviolable." N.C. Const. of 1776, Declaration of Rights, § 14.

> "In all controversies at law respecting property, the ancient mode of trial by jury is one of the best securities of the rights of the people, and ought to remain sacred and inviolable." N.C. Const. of 1868, art. I, § 19.

> "In all controversies at law respecting property, the ancient mode of trial by jury is one of the best securities of the rights of the people, and shall remain sacred and inviolable." N.C. Const. of 1971, art. I, § 25.

The 1868 Constitution merged actions at law and in equity, such that this right to a jury trial now applies to all civil claims, provided that the case respects property. N.C. Const. of 1868, art. IV, § 1. *See also Kiser v. Kiser*, 325 N.C. 502, 506-07, 385 S.E.2d 487, 489 (1989) ("[T]his section created no additional substantive rights to

AVR Davis Raleigh, LLC v. Triangle Constr. Co., Inc.

*Murphy, J., concurring.*

trial by jury in all civil cases, but rather assured that the jury trial rights substantively guaranteed by article I, section 19 (now article I, section 25) would apply equally to questions of fact arising in cases brought in equity as well as cases brought at law.").

Since the adoption of our first Constitution in 1776, our courts have repeatedly pronounced the importance of the right to a jury trial. "[W]e have a principle of our organic law, by which it is declared that the trial by jury is an institution which has been, and must be, cherished by every free people, as the best security for their lives and property, and ought to remain 'sacred and inviolable.'" *State v. Allen*, 48 N.C. 257, 262 (1855). Our Constitution thus guarantees this right to all those in North Carolina, albeit only under certain circumstances. "The right to trial by jury under article I has long been interpreted by this Court to be found only where the prerogative existed by statute or at common law at the time the Constitution of 1868 was adopted." *Kiser*, 325 N.C. at 507, 385 S.E.2d at 490. We have enforced this condition because the changes made by the 1971 Constitution did not alter the substantive rights guaranteed in the 1868 Constitution. There was a "clear intent on the part of the framers of the new document merely to update, modernize and revise editorially the 1868 Constitution." *N.C. State Bar v. DuMont*, 304 N.C. 627, 636, 286 S.E.2d 89, 95 (1982). This lack of substantive change to the jury trial provision does not show that "the framers of the 1970 Constitution intended that instrument to

enlarge upon the rights granted by the 1868 Constitution . . . . [S]uch an intent shows that the 1970 framers intended to preserve intact all rights under the 1868 Constitution." *Id.* The provision's deep roots in our state's history and the unwavering intent of the People to protect this right demonstrate that "section 25 of our Declaration of Rights is one of the 'great ordinances of the Constitution.'" *Kiser*, 325 N.C. at 509, 385 S.E.2d at 491 (quoting *Springer v. Philippine Islands*, 277 U.S. 189, 209, 48 S. Ct. 480, 485 (1928) (Holmes, J., dissenting)).

Therefore, while I recognize that our appellate courts and General Assembly have expressed a strong policy in favor of arbitration, the policy of the People of this state as expressed in our Constitution is for jury trials:

> The right to a jury trial is a substantial right of great significance. "It is a general rule, since the right of trial by jury is highly favored, that waivers of the right are always strictly construed and are not to be lightly inferred or extended by implication, whether with respect to a civil or criminal case . . . . Thus, in the absence of an express agreement or consent, a waiver of the right to a jury trial will not be presumed or inferred. Indeed, every reasonable presumption should be made against its waiver."

*Mathias v. Brumsey*, 27 N.C. App. 558, 560, 219 S.E.2d 646, 647 (1975) (quoting *In re Gilliland*, 248 N.C. 517, 522, 103 S.E.2d 807, 811 (1958)). The People have valued the sacred right to a jury trial since the adoption of our first state Constitution in 1776 and prioritized it over variations in civil proceedings:

> Our [C]onstitution declares that in all controversies at law respecting property the ancient mode of trial by jury is one

3

AVR Davis Raleigh, LLC v. Triangle Constr. Co., Inc.

*Murphy, J., concurring.*

> of the best securities of the rights of the people, and ought to remain sacred and inviolable . . . . [A]ny innovation amounting in the least degree to a departure from the ancient mode may cause a departure in other instances, and in the end endanger or pervert this excellent institution from its usual course.

*Whitehurt v. Davis*, 3 N.C. 113, 113 (1800). Indeed, the constitutional right to a trial by jury was the basis of one of the first challenges to the validity of a North Carolina statute. *See Bayard v. Singleton*, 1 N.C. 5, 5 (1787) (invalidating a statute that required cases be dismissed when a defendant could prove that he bought the property at issue from a commissioner of forfeited estates).

In light of the historical significance of this right to a jury trial, I stress that, although "North Carolina has a strong public policy favoring the settlement of disputes by arbitration[,]" we cannot abandon our constitutional rights in favor of procedural efficiency and convenience. *Johnston County v. R. N. Rouse & Co.*, 331 N.C. 88, 91, 414 S.E.2d 30, 32 (1992).

As the Majority observes, "there are several reasonable interpretations of the provision [at issue]," and a consideration of the People's policy as expressed in our Constitution should dictate that the provision be interpreted in favor of a jury trial. Therefore, I call upon our Supreme Court to make a recurrence to our fundamental principles and reconsider whether the People of this state have a policy of interpreting ambiguities in favor of the right to a jury trial over arbitration.